2007-NMCA-069

160 P.3d 595

**CITY OF DEMING, Appellant–
Appellee/Cross–Appellant,**

v.

**DEMING FIREFIGHTERS LOCAL 4521,
Appellee–Appellant/Cross–Appellee.**

Nos. 26,508, 26,509.

Court of Appeals of New Mexico.

April 19, 2007.

Management Associates, Inc., Dina E. Holcomb, French & Associates, Inc., Kerri L. Allensworth, Albuquerque, NM, for City of Deming.

Law Office of Justin Lesky, Justin Lesky, Albuquerque, NM, for Deming Firefighters Local 4521.

## OPINION

WECHSLER, Judge.

{1} We consider in this case the application of the grandfather clause of the New Mexico Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10–7E–1 to –26 (2003, as amended through 2005), to two provisions of a labor relations ordinance of the City of Deming (City). With regard to the ordinance provision excluding fire department officers from bargaining units, we hold that, under *Regents of the University of New Mexico v. New Mexico Federation of Teachers*, 1998–NMSC–020, 125 N.M. 401, 962 P.2d 1236, the grandfather clause does not apply and the New Mexico Public Employee Labor Relations Board (PELRB) must additionally address whether the City's fire department officers meet the definition of supervisors under the PEBA. We hold that the grandfa-

ther clause does apply to the ordinance provision concerning impasse procedures. We reverse, remanding to the PELRB.

## BACKGROUND

{2} The PEBA was enacted to grant to public employees the right to organize and collectively bargain with their employers. Section 10–7E–2. It contains a grandfather clause that reads:

A public employer other than the state that prior to October 1, 1991 adopted by ordinance, resolution or charter amendment a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives may continue to operate under those provisions and procedures. Any substantial change after January 1, 2003 to any ordinance, resolution or charter amendment shall subject the public employer to full compliance with the provisions of Subsection B of Section 26 ... of the Public Employee Bargaining Act.

Section 10–7E–26(A).

{3} The City adopted an ordinance pertaining to labor-management relations and employee organizing and collective bargaining on January 14, 1991. The City amended the ordinance prior to 2003. Two provisions of the ordinance are different from the PEBA and are in dispute in this case. The first defines a "supervisor" by reference to a job title and thereby precludes any employee with the title from participating in a bargaining unit. Deming, N.M., Ordinance no. 1039, § 3(I) (2001). The PEBA does not contain any such categorical title restriction. The second provision concerns procedures for addressing an impasse in labor-management negotiations. The ordinance provides for mediation in the event of impasse, and if the impasse persists, advisory arbitration under which the arbitrator provides an opinion to the city council. *Id.* § 13(B). The city council in turn renders the final, binding decision. *Id.* § 13(D). The PEBA currently provides for final, binding arbitration for a continuing impasse. Section 10–7E–18.

{4} To obtain recognition of a bargaining unit containing employees considered super-

visors by the first provision, the Deming Firefighters Local 4251 (Union) filed a petition for recognition with the City's labor-management relations board (City Board). The City Board denied relief based on the ordinance. The Union thereafter filed a petition for representation and a prohibited practice charge with the PELRB. The petition for representation requested recognition of the bargaining unit. The prohibited practice charge alleged that the City ordinance violated the PEBA because it (1) defined captains as supervisors and thereby excluded them from the right to collectively bargain, and (2) did not provide for final, binding arbitration in the event of impasse in contract negotiations. The PELRB executive director acted as the hearing examiner. The director concluded that (1) the PELRB had jurisdiction, (2) the two challenged provisions did not conform to the purpose of the PEBA and were invalid and not entitled to grandfather protection, and (3) the PELRB would retain jurisdiction to determine the appropriate bargaining unit based on the employees' responsibilities. The PELRB adopted the conclusions concerning jurisdiction and invalidity of the ordinance provisions. It remanded to the City Board to determine the appropriate bargaining unit.

{5} The City appealed to the district court. The district court concluded that the ordinance provision defining captains as supervisors came within the grandfather clause and could validly operate as written. It reversed the PELRB decision as to that provision. It further concluded that the ordinance impasse provision did not "provide employees with a meaningful opportunity to engage in collective bargaining" and therefore was not entitled to grandfather status. It affirmed the PELRB as to the impasse provision. The Union appeals from the district court's ruling on the supervisor ordinance, and the City appeals the impasse provision ruling. We consolidate the appeals on our own motion.

## STANDARD OF REVIEW

{6} The issues as to both ordinance provisions as framed by the district court require us to decide whether the grandfather clause applies. If it does, the City may operate under the ordinance and, because the PEBA does not apply, the PELRB does not have jurisdiction. If the grandfather clause does not apply, the parties must look to the provisions of the PEBA and the jurisdiction of the PELRB, rather than the ordinance. To decide whether the grandfather clause applies, we must interpret the PEBA and make a determination of law. *See Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806 (stating that statutory interpretation is a matter of law). We therefore review de novo the interpretations of both the district court and the PELRB. *Id.* ("[W]e will not defer to the Commission's or the district court's statutory interpretation, as this is a matter of law that we review de novo."). Although we may afford some deference to an agency's interpretation of statutes within its field of expertise, courts have the ultimate responsibility to interpret the law. *Regents*, 1998–NMSC–020, ¶ 17, 125 N.M. 401, 962 P.2d 1236.

## REGENTS OF THE UNIVERSITY OF NEW MEXICO V. NEW MEXICO FEDERATION OF TEACHERS

{7} *Regents* is central to both issues before us. It is the only applicable precedent considering the PEBA grandfather clause. It involved the labor-management policy of the University of New Mexico (UNM) adopted before October 1, 1991. *Regents*, 1998–NMSC–020, ¶ 2, 125 N.M. 401, 962 P.2d 1236. The policy expressly excluded certain types of employees from participating in collective bargaining. *Id.* The policy, however, conflicted with the later-enacted PEBA, which contained exclusions of employees from the collective bargaining process but opened the process to several types of employees who were excluded by the UNM policy. *Regents*, 1998–NMSC–020, ¶ 3, 125 N.M. 401, 962 P.2d 1236.

{8} Our Supreme Court in *Regents* addressed grandfather clauses in general and recognized that such clauses restrict the scope of a new statute in order to prevent harm. *Id.* ¶¶ 24–26. As a matter of statutory construction, the Court determined that because grandfather clauses make exception to the general operation of a law, courts

should give them a strict or narrow construction, such that they would apply only to cases that clearly fall "within the purpose, letter, or express terms, of the clause." *Id.* ¶ 27. It emphasized that grandfather clauses should be construed under the principal objective of statutory construction to "determine and give effect" to legislative intent and by construing the entire statute as a whole. *Id.* ¶ 28 (internal quotation marks and citation omitted).

{9} As to the PEBA grandfather clause, our Supreme Court noted the two requirements of the clause that (1) the public employer must have adopted "a system of provisions and procedures permitting *employees* to form, join or assist any labor organization for the purpose of bargaining collectively through exclusive representatives" and (2) the public employer must have taken such action prior to October 1, 1991. *Regents,* 1998–NMSC–020, ¶ 34, 125 N.M. 401, 962 P.2d 1236 (internal quotation marks and citation omitted). When it read the PEBA as a whole, it concluded that the legislature intended the PEBA to provide collective bargaining to all public employees other than those expressly excluded from the PEBA. *Regents,* 1998–NMSC–020, ¶ 48, 125 N.M. 401, 962 P.2d 1236. It therefore interpreted the first requirement of the grandfather clause to refer to those same employees. *Id.* It further interpreted the grandfather clause narrowly to apply to specific provisions of UNM's policy, "rather than the policy as a whole." *Id.* ¶ 35. When it viewed the specific provision of the UNM policy pertaining to covered employees, it concluded that that provision of the policy did not meet the first requirement of the grandfather clause that it permit the requisite employees to engage in collective bargaining. *Id.* ¶ 43.

## ORDINANCE PROVISION CONCERNING SUPERVISORS

{10} The City's ordinance prohibits supervisors from participating in a bargaining unit. It defines a "supervisor" as including fire captains regardless of their job responsibilities. The PEBA, on the other hand, affords collective bargaining rights to all public employees except management and confidential employees. Section 10–7E–5. We note that

although the original PEBA permitted exception to "management employees, supervisors and confidential employees," we do not consider the difference to be material to this appeal. NMSA 1978, § 10–7D–5 (1992) (repealed 1999). The critical difference between the ordinance and the PEBA is that the ordinance categorically excludes specific positions from collectively bargaining without reference to the responsibilities of the positions, whereas the PEBA creates broad exceptions based on job responsibilities.

{11} As a threshold matter, we address the PELRB's jurisdiction. According to the City, the PELRB must initially determine whether a public employer has "in place a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively . . . prior to October 1, 1991." If it does, the PELRB does not have jurisdiction to determine the substantive issues brought before it.

{12} We agree with this general proposition. However, under *Regents,* the existence of a system of provisions and procedures that meets the requirements of the grandfather clause is not necessarily a simple determination. *Regents* requires that the grandfather clause be narrowly construed and that a reviewing tribunal analyze a public employer's system adopted prior to October 1, 1991 by reviewing its relevant parts, rather than the system as a whole. *Regents,* 1998–NMSC–020, ¶ 35, 125 N.M. 401, 962 P.2d 1236. The grandfather clause is part of the PEBA, and, according to *Regents,* must be construed with reference to the purpose and other provisions of the PEBA. *Regents,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (stating objectives of statutory construction of giving effect to intent of legislature and construing "entire statute as a whole so that all the provisions will be considered in relation to one another"). Because the other provisions of the PEBA make clear its intent that all public employees, other than those specifically excepted from the PEBA, be permitted to collectively bargain, *Regents* requires that a public employer's system adopted prior to October 1, 1991 "extend the right to bargain collectively

to all employees who have been afforded this right under [the] PEBA." *Regents,* 1998–NMSC–020, ¶ 43, 125 N.M. 401, 962 P.2d 1236. In *Regents,* our Supreme Court held that a system that extended the right to collectively bargain to some, but not all, employees who have been afforded the right under the PEBA did not satisfy the grandfather clause. *Regents,* 1998–NMSC–020, ¶ 43, 125 N.M. 401, 962 P.2d 1236.

{13} As to the ordinance's supervisor provision, the PELRB and the district court differ in their interpretation of *Regents.* The PELRB held that *Regents* directly applied because, as in *Regents,* the ordinance "categorically withholds the right to collectively bargain from certain public employees, [including captains], by statutorily defining them as supervisors." The district court disagreed, distinguishing *Regents* because the policy at issue in *Regents* "excluded multiple categories of employees from public bargaining without a prior determination of whether" they fit the PEBA exception. The district court held that the ordinance was entitled to grandfather status because it made that determination prior to the enactment of the PEBA.

■ {14} We agree with the PELRB's interpretation. *Regents* requires that we interpret the grandfather clause in conjunction with the other provisions of the PEBA. *Regents,* 1998–NMSC–020, ¶¶ 28, 43, 125 N.M. 401, 962 P.2d 1236. Thus, in *Regents,* our Supreme Court held that a policy that excluded employees who were not excepted under the PEBA did not comply with the grandfather clause. *Regents,* 1998–NMSC–020, ¶ 43, 125 N.M. 401, 962 P.2d 1236. Even though the City developed its exclusions by definition in its ordinance, there is no indication that the definition and resultant exclusion comports with the exceptions of the PEBA. The PEBA excepts "management employees and confidential employees." Section 10–7E–5. It contemplates exception based on job responsibilities, not title. *See* § 10–7E–4(U) (defining "supervisor"). The parties did not present evidence concerning the job responsibilities of the City's fire captains. Because the PEBA may extend collective bargaining rights to these city employ-

ees, if they are qualified, and the ordinance would categorically deny them such rights, we interpret *Regents* to preclude application of the grandfather clause without additional evidence of job responsibilities. As the PELRB has the initial ability to determine its jurisdiction, we remand to the PELRB to conduct such a hearing. *Cf. Cibas v. N.M. Energy, Minerals & Natural Res. Dep't,* 120 N.M. 127, 132, 898 P.2d 1265, 1270 (Ct.App. 1995) (stating that the State Personnel Board "retains the authority at all times to examine facts and make a finding concerning its own jurisdiction, subject, of course, to review by the courts"). If the evidence establishes that the PELRB does not have jurisdiction, it must dismiss, leaving any further proceedings under the ordinance to the City Board.

{15} The City makes an additional argument contrary to this conclusion. It contends that *Regents* does not bear on the issue of the PELRB's jurisdiction that the City raises in this case because the issue was not decided in *Regents.* As to jurisdiction, it contends that the City Board had jurisdiction to address issues arising from the ordinance and, once the City Board determined that it had jurisdiction by virtue of the grandfather clause, its jurisdiction was exclusive, prohibiting the PELRB from entertaining jurisdiction concerning the ordinance. According to the City, the district court failed to address its jurisdictional issue.

{16} We agree with the City to a point. The district court did not directly address the City's jurisdictional argument because it assumed that the Supreme Court would not have accepted jurisdiction in *Regents* if it did not have it. However, as we view the issue, the jurisdiction of the City Board and the PELRB are separate issues. The City Board was established by the City as the City's labor-management relations board. As such, it had jurisdiction to consider the Union's petition for recognition if the grandfather clause applied. The Union, as an aggrieved party, could have proceeded in district court after the City Board's ruling. Section 10–7E–23(B). On the other hand, the PELRB's jurisdiction originates with the PEBA, which allows the PELRB to entertain petitions for representation and prohibited

practice charges, as the Union filed in this case. Section 10–7E–9(A)(2)–(3). As we have discussed, if the grandfather clause applies, the PELRB does not have jurisdiction to rule on the merits of any claims that the City has not complied with the PEBA. Like the City Board, the PELRB must, however, make the threshold determination of its jurisdiction. Even if we were to conclude that *Regents* does not pertain to the jurisdiction of the PELRB, an issue we do not address, *Regents* sets out requirements for acceptance or rejection of the grandfather clause. It therefore has direct bearing on our analysis.

{17} We do not mean to say that a proceeding before the City Board is irrelevant to a later PELRB proceeding. Preclusion principles may apply, *see generally Moffat v. Branch,* 2005–NMCA–103, ¶ 11, 138 N.M. 224, 118 P.3d 732 (listing the elements of claim preclusion), but the City has not raised such an argument in this case. As a result, we conclude that the PELRB has the ability to consider its jurisdiction in this case.

## IMPASSE PROCEDURES

{18} The grandfather clause sets forth the same analysis with regard to the ordinance's impasse procedures: whether the City (1) adopted "a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives" (2) prior to October 1, 1991. Section 10–7E–26(A). Again, if the grandfather clause applies, the PELRB does not have jurisdiction over the case.

{19} In affirming the PELRB's ruling that the ordinance's impasse provisions were not protected by the grandfather clause, the district court reasoned that the legislature provided for binding arbitration to resolve an impasse as a substitute for the leverage obtainable through the prohibited tactics of strikes and lock-outs. It concluded that the advisory arbitration impasse procedure of the ordinance did not provide any more than the right to petition the government and thus was not "a meaningful opportunity to engage in collective bargaining."

{20} We do not agree with the district court analysis because it differs from the requirements of the statute. The grandfather clause requires only that a public employer have in place "a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives." Section 10–7E–26(A). It does not provide any minimal requirement with respect to the quality of the system or provide any qualitative measure as to the effectiveness of the collective bargaining. *Id.* As a matter of statutory construction, we do not read language that is not present into a statute. *See Regents,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236.

{21} Instead, as stated in *Regents,* we will construe a statute in its entirety, considering all provisions in relation to each other. *Id.* In fulfilling this obligation, we look to the requirements of "collective bargaining" within the PEBA. The PEBA defines "collective bargaining" as "the act of negotiating between a public employer and an exclusive representative for the purpose of entering into a written agreement regarding wages, hours and other terms and conditions of employment." Section 10–7E–4(F). Again, this definition does not contain any qualitative requirement or measure of effectiveness. Nor does it require any specific impasse provision or binding procedure. We read the legislative language to mean that the legislature did not intend for the PELRB or a court to ascertain the quality of collective bargaining provisions or procedures in order to apply the grandfather clause.

{22} Indeed, the legislative history of the PEBA also indicates that binding arbitration is not necessary for grandfather status. Although the current version of the PEBA requires binding arbitration to resolve an impasse in the negotiation of a collective bargaining agreement, § 10–7E–18, the original version required only advisory mediation, NMSA 1978, § 10–7D–18(B) (1992) (repealed 1999). The reenactment, however, did not modify the operative provision of the grandfather clause, Section 10–7E–26(A). Because advisory arbitration was originally considered appropriate impasse resolution procedure for all purposes, it was clearly

acceptable for grandfather status. When the legislature reenacted the PEBA with the new impasse resolution procedure, it did not change the grandfather clause to require any different impasse resolution procedure nor did it amend the definition of collective bargaining. If the legislature had intended to change the effect of these provisions, it would have amended them. *See Kahrs v. Sanchez,* 1998–NMCA–037, ¶ 24, 125 N.M. 1, 956 P.2d 132.

 {23} The purpose of a grandfather clause is to preserve "something old, while the remainder of the law of which it is a part institutes something new." *Regents,* 1998–NMSC–020, ¶ 25, 125 N.M. 401, 962 P.2d 1236. Although the statute should be narrowly construed, we must nevertheless give effect to the legislative intent in enacting a grandfather clause. *Id.* ¶ 28. We do not give effect to or embrace legislative intent if we add language to a statute that the legislature did not adopt. *See Santa Fe County Bd. of County Comm'rs v. Town of Edgewood,* 2004–NMCA–111, ¶ 7, 136 N.M. 301, 97 P.3d 633. We likewise do not give effect to legislative intent by reading a statute in a way that would render it meaningless. *See id.* Construing Section 10–7E–26(A) to apply only to ordinances that adopt the same system of provisions and procedures as those currently in the PEBA would render Section 10–7E–26(A) meaningless.

## CONCLUSION

{24} We reverse the district court's determination that the grandfather clause applies to the provision in the ordinance excluding captains from collective bargaining. We also reverse the district court's conclusion that the grandfather clause does not apply to the impasse procedures in the ordinance. We remand to the PELRB for a hearing to determine its jurisdiction in accordance with this opinion.

{25} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.