IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-007

Filing Date: March 6, 2012

Docket No. 32,570

CITY OF ALBUQUERQUE,

Petitioner-Petitioner,

v.

JUAN B. MONTOYA, Director of
the Public Employee Labor Relations
Board and the PUBLIC EMPLOYEE
LABOR RELATIONS BOARD,

Respondents-Respondents,

and

AFSCME COUNCIL 18, LOCAL 624,

Real Party in Interest.

ORIGINAL PROCEEDING ON CERTIORARI
William F. Lang, District Judge

Robert D. Kidd, Jr., Interim City Attorney
Shelley B. Mund, Assistant City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Thomas L. Stahl
Jocelyn C. Drennan
Albuquerque, NM

for Petitioner

Gary K. King, Attorney General

1

Andrea R. Buzzard, Assistant Attorney General
Santa Fe, NM

for Respondents

Youtz & Valdez, P.C.
Shane C. Youtz
Marianne Lee Bowers
Albuquerque, NM

for Real Party in Interest

**OPINION**

**MAES, Justice.**

**{1}** The issue presented in this appeal is whether NMSA 1978, Section 10-7E-26(A) (2003), the grandfather clause of the Public Employee Bargaining Act (the Act), applies to the City of Albuquerque Labor-Management Relations Ordinance (the City Ordinance), as it pertains to the process for the appointment of interim members to the Labor-Management Relations Board of the City of Albuquerque (the Local Board). When the Local Board must meet during the absence of a member, Section 3-2-15(D) of the City Ordinance provides that the City Council President is to appoint an interim member "with due regard to the representative character of the [Local] Board." Albuquerque, N.M. Rev. Ordinances ch. 3, art. II, § 3-2-15(D) (1974) (amended 2001). The Court of Appeals characterized the City Council President as "managerial personnel" and held that the President's appointment of a third member defeated the neutral makeup of the Local Board's membership. We disagree and hold that the City Council President does not serve in either a "management" or a "labor" capacity, and therefore the City Ordinance provision that provides a procedure by which the City Council President appoints a member to the Local Board during the absence of a member does not violate the Act's grandfather clause requirement that a local ordinance create a system of collective bargaining.

**{2}** Accordingly, we reverse the Court of Appeals' holding that, because "the [City Ordinance] establishing [the Local Board] is not eligible to be grandfathered pursuant to Section 10-7E-26(A)," the State Public Employee Labor Relations Board (the PELRB) has jurisdiction over the underlying matter. *City of Albuquerque v. Montoya*, 2010-NMCA-100, ¶ 1, 148 N.M. 930, 242 P.3d 497. We remand to the Court of Appeals for consideration of the other issues not previously addressed.

**FACTS AND PROCEDURAL HISTORY**

**{3}** In June 2007, the American Federation of State, County, and Municipal Employees Council 18, Local 624 (AFSCME), filed a prohibited practices complaint with the Local

Board on behalf of Steve Griego, an AFSCME member. The complaint alleged that the City of Albuquerque (the City) discriminated against Griego by failing to hire him for an Electrician 3 position, a position for which he was qualified, because of his union activities. Following the prohibited practices complaint hearing, the "neutral" member of the Local Board recused from the matter. As a result of the deadlock, the two remaining members of the Local Board could not adjudicate AFSCME's complaint.

**{4}** Following the deadlock, AFSCME filed the same prohibited practices complaint with the PELRB. The City filed with the Local Board a motion for appointment of a neutral third member for the pending action. City Ordinance § 3-2-15(D). The Local Board issued an order directing the City and AFSCME to agree on a neutral third member to present to the City Council President for approval. If the City and AFSCME could not reach an agreement, then the remaining two Local Board members were to select a neutral third member to present to the City Council President. The City Council President subsequently solicited names from both the City and AFSCME. The City proposed either retired Chief Justice of the New Mexico Supreme Court Gene Franchini, or the neutral chair of Albuquerque's Personnel Board, Sean Olivas, to serve as the neutral third member. AFSCME did not respond to the City Council President's request. The City claimed that the "process failed due to [AFSCME's] refusal to participate." AFSCME claimed that according to the plain language of Section 3-2-15(D) of the City Ordinance, the appointment of a neutral third member was not warranted when the neutral member had recused from the proceedings. As a result of the parties' failure to agree on a neutral third member, the Local Board entered an order directing the two remaining members to petition the City Council President for appointment of the neutral third member.

**{5}** The same day the City filed with the Local Board its motion for appointment of a neutral third member, it filed with the PELRB a motion to dismiss the proceeding for lack of jurisdiction because the dispute remained before the Local Board. Juan B. Montoya, Director of the PELRB (Director Montoya), determined that Section 3-2-15(D) of the City Ordinance was not grandfathered under the Act, and therefore the PELRB had proper jurisdiction over the complaint. Director Montoya's conclusion was based on a reading of Section 3-2-15(D) of the City Ordinance as conflicting with the requirement in Section 10-7E-10(B) of the Act that a local board be balanced in membership.

**{6}** The City then filed a petition in the Second Judicial District Court seeking the issuance of a writ to prohibit the PELRB from hearing AFSCME's complaint and to stay the PELRB proceedings. The district court granted the writ and ordered the PELRB to cease all proceedings related to the complaint, finding that Section 3-2-15(D) of the City Ordinance was grandfathered under the Act, and therefore, the Local Board, not the PELRB, had proper jurisdiction over the matter.

**{7}** The PELRB and AFSCME appealed to the Court of Appeals. The Court of Appeals reversed the district court, holding that "the ordinance establishing [the City's] labor board

3

is not eligible to be grandfathered pursuant to Section 10-7E-26(A)." *Montoya*, 2010-NMCA-100, ¶ 1. The court explained that

> [t]he [Act] requires that a local board, like the PELRB, be a balanced and, therefore, neutral body. . . . Even though Section 3-2-15(D) requires the president of the city council to appoint an interim member with deference to the representational character of the board, the president's effort to incorporate neutrality in an often highly polarized environment is not sufficient to uphold the integrity of the essential process. . . . Section 3-2-15(D) of the Ordinance effectively removes from an employee the "bargaining" aspect of collective bargaining when it establishes a process whereby two-thirds of a local board could be comprised of appointees pursuant to management recommendations.

*Id.* ¶ 10.

**{8}** The City filed a petition for writ of certiorari, which we granted pursuant to NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA. *City of Albuquerque v. Montoya*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147. The question presented on appeal is:

> Did the Court of Appeals err in holding that a provision of the Labor-Management Relations Ordinance of the City of Albuquerque, which allows the president of the City Council to appoint an interim member of the City's Labor Board "with due regard to the representative character of the Board," is not entitled to grandfather status under [the Act] because the provision does not productively allow collective bargaining?

**GRANDFATHER CLAUSE**

**{9}** The Act, which "guarantee[s] public employees the right to organize and bargain collectively with their employers," NMSA 1978, § 10-7E-2 (2003), was first enacted in 1992. NMSA 1978, §§ 10-7D-1 to -26 (1992) (repealed effective July 1, 1999). Some public employers had existing systems in place for collective bargaining. Therefore, the Act included a grandfather clause which permitted a public employer to preserve its collective bargaining system under certain circumstances. Section 10-7E-26. The Act's grandfather clause allows a public employer to preserve an existing collective bargaining system that was created prior to October 1, 1991, as long as the "system of provisions and procedures permit[s] employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives." Section 10-7E-26(A).

**{10}** In order for the City Ordinance at issue here to receive grandfather status, two requirements must be satisfied: "(1) the public employer must have adopted 'a system of provisions and procedures permitting *employees* to form, join or assist any labor organization for the purpose of bargaining collectively through exclusive representatives' and (2) the

4

public employer must have taken such action prior to October 1, 1991." *City of Deming v. Deming Firefighters Local 4521* (*Deming*), 2007-NMCA-069, ¶ 9, 141 N.M. 686, 160 P.3d 595 (quoting *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers* (*Regents*), 1998-NMSC-020, ¶ 24, 125 N.M. 401, 962 P2d 1236). In 1974 the City adopted the City Ordinance, which provides for collective bargaining by City employees. *See* Albuquerque, N.M., Ordinances ch. 3, art. II, § 3-2-2 (1974) (amended 1977). The City Ordinance was most recently revised in 2002, *see* parenthetical notation to Albuquerque, N.M., Rev. Ordinances ch. 3, art. II, § 3-2-18 (2002), and the method for appointing an interim member has not substantially changed since 1977. *See* parenthetical notation to Ordinances § 3-2-2; § 3-2-13. Because the City Ordinance was created prior to October 1, 1991, both parties agree that Subsection A of the Act's grandfather clause applies to this matter. Therefore, we only address whether the City Ordinance's provision allowing the appointment of an interim Local Board member by the City Council President contradicts the Act's definition of collective bargaining. Stated another way: Is the City ordinance grandfathered under the the Act to permit the City Council President to select an interim local board member?

**STANDARD OF REVIEW**

**{11}** Grandfather clauses are statutory provisions that "delineate a special exception from the general requirements of a statute." *Regents,* 1998-NMSC-020, ¶ 34. "The effect of these provisions is to narrow, qualify, or otherwise restrain the scope of the statute. They remove from the statute's reach a class that would otherwise be encompassed by its language." *Id.* Essentially, "[a] grandfather clause preserves something old, while the remainder of the law of which it is a part institutes something new." *Id.* ¶ 25. "[A] grandfather clause will be construed to include no case not clearly within the purpose, letter, or express terms, of the clause." *Id*. ¶ 27.

**{12}** Determining the applicability of a grandfather clause is a question of statutory construction which we review de novo. *Deming*, 2007-NMCA-069, ¶ 6; *see also Regents*, 1998-NMSC-020, ¶ 28 ("In establishing whether a party falls within the scope of a grandfather clause, courts will apply the rules of statutory construction that are appropriate in the interpretation of any statute."). "In construing a statute, our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and [w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (alteration in original) (internal quotation marks omitted). "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Regents*, 1998-NMSC-020, ¶ 28.

**DISCUSSION**

5

**{13}** We begin with a discussion of the Act and the City Ordinance. The Act "guarantee[s] public employees the right to organize and bargain collectively with their employers." Section 10-7E-2. Thus, the Act creates a statewide labor board, the PELRB, NMSA 1978, §§ 10-7E-8 to -9, whose function is to "promulgate rules necessary to accomplish and perform its functions and duties as established in [the Act]," Section 10-7E-9(A). Section 10-7E-10(A) of the Act requires that the local board be balanced in membership and therefore a neutral body. The local board shall be comprised of one member appointed on the recommendation of individuals representing labor, one member appointed on the recommendation of individuals representing management, and one member appointed on the recommendation of the first two appointees.

**{14}** Section 3-2-15 of the City Ordinance establishes the Local Board, which is comprised of one member selected by a committee of labor organization representatives, and one member appointed by the other two members who serves as the neutral member of the Local Board. City Ordinance § 3-2-15(A)-(C) (Composition of the Local Board); *cf.* § 10-7E-10(B) ("The local board shall be composed of three members appointed by the public employer. One member shall be appointed on the recommendation of individuals representing labor, one member shall be appointed on the recommendation of individuals representing management and one member shall be appointed on the recommendation of the first two appointees."). The Act and the City Ordinance's language differs, however, when a member of a local board is temporarily absent versus when a member is unable to complete his or her two-year term.

**{15}** Under the Act, "[v]acancies shall be filled in the same manner as the original appointment, and such appointments shall only be made for the remainder of the unexpired term." Section 10-7E-10(C). The Act does not address if, or how, an interim member is to be selected during a board member's absence. The City Ordinance, however, does distinguish between a Local Board member's inability to complete his or her two-year term and a member's absence. When a Local Board member cannot complete the term, "a new member shall be selected for the remainder of the term in accord with the selection process of this article." City Ordinance § 3-2-15(D). When the Local Board must meet in the absence of a member, however, "the City Council [President] shall appoint an interim Board member from the public at large with due regard to the representative character of the Board." City Ordinance § 3-2-15(D).

**{16}** The Court of Appeals held in this case that the Local Board's process for selecting an interim board member did not qualify for grandfather status because it "essentially ignore[d] Section 10-7E-10(B) of the [Act], regarding as surplusage its requirement that a third neutral member of a local board be appointed pursuant to the recommendations of the other two members." *Montoya*, 2010-NMCA-100, ¶ 11; *see also* Section 10-7E-10(B). The Court of Appeals reasoned that Section 3-2-15(D) of the City Ordinance created a process "whereby two-thirds of a local board could be comprised of appointees pursuant to management recommendations." *Id.* ¶ 10. The Court characterized the City Council President as "managerial personnel" and determined that even if he appointed an interim

6

member "with deference to the representational character of the board, the [City Council] [P]resident's effort to incorporate neutrality in an often highly polarized environment [was] not sufficient to uphold the integrity of the essential process." *Id.*

**{17}** We disagree with the Court of Appeals' characterization of the City Council President as "managerial personnel." The City Ordinance does not define the City Council President's role as a managerial position. The City Ordinance defines the City Council, which includes the City Council President, as "the legislative body of the city." Albuquerque, N.M., Rev. Ordinances ch. 1, art. I, § 1-1-5(B) (1994). The City Council President is elected by his or her fellow City Council members and serves at the City Council's pleasure until December 1 of each odd-numbered year, or until a successor is selected. Albuquerque, N.M., Rev. Ordinances ch. 2, art. I, § 2-1-9 (1974) (amended 1990).

**{18}** The Mayor, not the City Council President, is "the elected officer of the city who exercises administrative control and supervision over the city and hires or appoints directors of all city departments." City Ordinance § 1-1-5. The Mayor, not the City Council President, is charged with appointing one member to the Local Board. City Ordinance § 1-1-5(B). The City Council President, an individual who serves in neither a "management" nor a "labor" capacity, appoints an individual to the Local Board only when an interim member is needed. Ordinance § 3-2-15(D). The City Ordinance ensures that the interim member does not alter the composition of the Local Board by requiring the City Council President to make the decision in light of the representative character of the Local Board. *Id.*

**{19}** Albuquerque's City Charter further confirms the division of function between the Mayor and the City Council. Article V of the Charter states that "[t]he Mayor shall control and direct the executive branch. . . . The Mayor shall be the chief executive officer with all executive and administrative powers of the city. . . ." Albuquerque, N.M., Rev. Ordinances, Charter of the City of Albuquerque, art. V, § 3. The Charter explicitly states that the City Council is "the legislative branch of the city," *id.*, art. IV, § 1, and that the "[City] Council shall not perform any executive functions except those functions assigned to the Council by this Charter," *id.* § 8.

**{20}** The Court of Appeals assumed that the City Council President, as management personnel, would be unable to fulfill his duty because of the "highly polarized environment" of a labor-management dispute. *Montoya*, 2010-NMCA-100, ¶ 10. This assumption, however, is contrary to our case law that "a public official is presumed to properly perform his or her duty." *Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 8, 145 N.M. 280, 196 P.3d 1286. Furthermore, as we have explained above, a plain reading of the City Ordinance reveals that the City Council President does not serve in a managerial or labor role.

**{21}** The City Ordinance in this case aligns with Subsection A of the Act's grandfather clause requirement that a local ordinance create a system of collective bargaining. The Act defines collective bargaining as "the act of negotiating between a public employer and an exclusive representative for the purpose of entering into a written agreement regarding

7

wages, hours and other terms and conditions of employment." NMSA 1978, § 10-7E-4(F). The City Ordinance defines collective bargaining as "a procedure whereby representatives of the city government and an employee organization meet, confer, consult, and negotiate with one another in a good-faith effort to reach agreement or otherwise resolve differences relating, or with respect, to wages, hours and other terms and conditions of employment." Albuquerque, N.M., Rev. Ordinances ch. 3, art II, § 3-2-3 (1974) (amended 1977). Although the City Ordinance provides a procedure by which the City Council President, an individual who is neither in a management nor labor position, appoints a member to the Local Board during the absence of a member, this provision does not violate the definition of collective bargaining under the Act.

**CONCLUSION**

**{22}** Accordingly, Section 3-2-15(D) of the City Ordinance, which provides for the appointment of an interim member of the Local Board if a regular member is absent, does not violate the grandfather clause requirement that a local ordinance create a system of collective bargaining. We reverse the Court of Appeals' holding that the PELRB has jurisdiction over the underlying matter and remand to consider the issues not previously addressed.

**{23}  IT IS SO ORDERED.**

 

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _City of Albuquerque v. Montoya_, Docket No. 32,570**

**EL        EMPLOYMENT LAW**
EL-CB        Collective Bargaining

**GV**        **GOVERNMENT**
GV-OR      Ordinances
GV-PE      Public Employees

**ST**         **STATUTES**
ST-IP       Interpretation