# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: March 26, 2015

**NOS. 33,138 and 33,668  (consolidated)**

**ALFREDO RODRIGUEZ,**

Plaintiff-Appellee,

v.

**STEPHAN WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Duhigg, Cronin, Spring & Berlin, P.A.
David L. Duhigg
Albuquerque, NM

for Appellee

Ripley B. Harwood, P.C.
Ripley B. Harwood
Albuquerque, NM

for Appellant

## OPINION

**GARCIA, Judge.**

{1}     Defendant Stephan Williams appeals the judgment entered by the district court against him and in favor of Plaintiff Alfredo Rodriguez after a bench trial on a personal injury claim arising from a motor vehicle accident. We affirm.

## BACKGROUND

{2}     In February 2012, Defendant ran a red light and struck Plaintiff's vehicle, injuring Plaintiff. At the time of the crash, Defendant's blood-alcohol content was .11, Plaintiff's blood-alcohol content was .076, and Plaintiff was not wearing a seat belt. Plaintiff was transported by ambulance to the hospital where he underwent a "craniotomy for evacuation of [a] subdural hematoma" and spent a total of eight days in recovery. Plaintiff's medical bills totaled $111,924.63. Plaintiff sued Defendant for damages.

{3}     Plaintiff, who had been earning $9.50 per hour as an auto dealership employee, was unable to work for three months after the accident and was apparently uninsured and unable to pay his medical bills. As a result, the hospital filed a lien in the event he was awarded a judgment or received insurance proceeds. In response to the lien, Plaintiff amended his complaint to include a claim against the hospital that his medical bill was unreasonable. Plaintiff and the hospital eventually entered into a

settlement agreement in which the hospital agreed to accept one-third of "all monetary recovery [Plaintiff] receives arising out of or relating to the [a]ccident" in full satisfaction of his medical bill. The hospital's chief financial officer (CFO) testified at trial that Plaintiff's medical bill of $111,924.63 was reasonable and necessary for Plaintiff's care. The district court asked the CFO whether the settlement agreement would allow the hospital to recover more than what it had billed in the event one-third of Plaintiff's recovery exceeded the amount of his medical bill. The CFO replied that in her experience with this type of settlement agreement, she had never seen a case where the hospital recovered more than the billed amount, that the hospital usually receives less than what it billed, and that she believed the agreement capped the hospital's recovery at the amount of the bill. The CFO explained that the hospital typically enters into this kind of settlement agreement with an uninsured patient so that any award is evenly split between the patient, the patient's attorney, and the hospital.

{4} After a bench trial, the district court entered judgment in favor of Plaintiff. It concluded that Defendant was primarily at fault for Plaintiff's injuries and that Plaintiff was only 5% at fault due to his own alcohol impairment. The district court declined to consider the fact that Plaintiff was not wearing his seat belt in its comparative fault analysis because NMSA 1978, § 66-7-373(A) (2001) prohibits such

2

consideration. The district court found that Plaintiff's total damages amounted to $191,864.63, which consisted of $4,940 in lost wages; $111,924.63 in medical costs; $25,000 in "[n]ature, extent and duration"; and $50,000 in pain and suffering. It subtracted 5% off of Plaintiff's total damages to account for his percentage of fault, and entered judgment against Defendant in the amount of $182,271.40.

{5}     Plaintiff renews four arguments on appeal: (1) the unlawful acts doctrine barred Plaintiff's claims; (2) the district court should have considered the fact that Plaintiff was not wearing a seat belt in determining Plaintiff's comparative negligence; (3) Plaintiff's seat belt non-use barred operation of the collateral source rule; and (4) Plaintiff's medical damages should have been reduced to the amount that the hospital eventually agreed to accept from Plaintiff, not what it initially billed.

**DISCUSSION**

**A.     Unlawful Acts Doctrine**

{6}     Defendant argues that our Supreme Court's decision in *Desmet v. Sublett* adopted a common law rule—the "unlawful acts" doctrine—that applies in this case to preclude Plaintiff from recovering damages against Defendant because Plaintiff was unlawfully driving under the influence of alcohol at the time Defendant ran a red light and struck Plaintiff's vehicle. *See* 1950-NMSC-057, 54 N.M. 355, 225 P.2d 141. We disagree with Defendant's argument for several reasons.

3

{7}     First, although the facts of this case are distinguishable, the judgment in this case is consistent with the principles that our Supreme Court applied in *Desmet*. There, the plaintiff bought a truck from a third party. *Id.* ¶ 2. The plaintiff and the third party agreed that the third party would use the truck to haul logs for hire over the public highways. *Id.* The defendant was a mechanic who had repaired the truck during the time that the third party owned it. *Id.* The third party never paid the defendant for those repairs. *Id.* After the plaintiff bought the truck from the third party, he authorized the third party to take it to the defendant to repair it. *Id.* The defendant repaired the truck, but refused to surrender the truck until he received payment for the repairs that he made when the third party owned the truck. *Id.* The plaintiff sued the defendant for return of the truck and for damages in the amount of income the plaintiff lost from not being able to use the truck to haul logs for hire during the year in which the defendant retained it. *Id.* The district court ordered the truck be returned to the plaintiff and awarded the plaintiff damages in an amount equal to the fair rental value of the truck for each day that the defendant refused to surrender it. *Id.* ¶¶ 2-3. The district court also found that the plaintiff had not properly registered the truck and that he did not have the required permit to operate the truck for hire over the public highways. *Id.* ¶ 3. Our Supreme Court upheld the order returning the truck to the plaintiff, but it reversed the damages award based on the

4

> well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in a part, on a violation by himself of the criminal or penal laws.

*Id.* ¶ 9. It recognized that the policy behind this rule is that "[n]o court will lend its aid to a man who [founded] his cause of action upon an immoral or illegal act." *Id.* ¶ 11 (internal quotation marks and citation omitted). The Supreme Court concluded that this rule precluded the plaintiff's monetary recovery because "the plaintiff [founded] his claim for damages on the fact that he was not allowed to operate his truck on the public highways of this state in violation of its positive law." *Id.* ¶ 12. In other words, the plaintiff could not recover damages on a claim of lost income when the activity that would have produced that income would have been done unlawfully. *Id.*

{8}     Here, Plaintiff's damages claim was based on injuries he sustained when Defendant ran a red light and struck his vehicle. The district court found that a small portion of Plaintiff's injuries resulted from his own alcohol impairment, and it reduced his damages accordingly. Thus, the damages that Plaintiff actually recovered were founded solely on Defendant's negligence in running a red light and striking Plaintiff's vehicle, not on Plaintiff's unlawful act of driving impaired. In *Desmet*, one hundred percent of the income that the plaintiff claimed to have lost due to the

defendant's conduct would have been earned in violation of New Mexico law, and the Supreme Court accordingly reduced his recovery by one hundred percent. *Id.* ¶ 15. Here, consistent with *Desmet*, Plaintiff's recovery was reduced by the portion of the damages attributed to his unlawful act.

{9}     Second, Defendant urges this Court to follow the rule adopted by New York courts, one that precludes a plaintiff from recovering any damages for injuries sustained while committing an unlawful act, under certain circumstances. In particular, Defendant cites *Alami v. Volkswagen of Am., Inc.*, 766 N.E.2d 574, 575 (N.Y. App. 2002) (involving an intoxicated driver who crashed his Volkswagen Jetta into a utility pole and was killed). However, *Alami* does not support Defendant's argument. *Id.* at 578.

{10}     In *Alami*, the driver's widow sued Volkswagen and claimed that a defect in the Jetta's design enhanced the driver's injuries. *Id.* at 575. The trial court granted summary judgment in favor of Volkswagen, dismissing the widow's damages claim because the decedent's act of driving intoxicated was a serious violation of the law that directly resulted in his injuries. *Id.* In reversing summary judgment, New York's highest court recognized that driving intoxicated was "indisputably a serious violation of the law." *Id.* However, it concluded that the rule precluding recovery based on unlawful acts did not apply because (1) "[i]f Volkswagen did defectively design the

6

Jetta . . . it breached a duty to any driver of a Jetta involved in a crash regardless of the initial cause"; (2) the plaintiff did not "seek to profit from her husband's intoxication—she ask[ed] only that Volkswagen honor its well-recognized duty to produce a product that does not unreasonably enhance or aggravate a user's injuries"; and (3) "[t]he duty she [sought] to impose on Volkswagen originates not from her husband's act [of driving intoxicated], but from Volkswagen's obligation to design, manufacture and market a safe vehicle." *Id.* at 577. In reaching this conclusion, the New York court emphasized that the unlawful acts rule "embodies a narrow application of public policy imperatives under limited circumstances[,]" and that "[e]xtension of the rule here would abrogate legislatively mandated comparative fault analysis in a wide range of tort claims." *Id.*

{11}     Other New York cases also address whether an intoxicated driver can recover in a negligence action where the driver's intoxication was a partial cause of his or her injuries. In *LaPage v. Smith*, 563 N.Y.S.2d 174, 174-75 (App. Div. 1990), a New York appellate court concluded that the plaintiff was barred from recovering against a defendant in a wrongful death action where the plaintiff's son was killed while drag racing at speeds over one hundred miles per hour and was intoxicated. There, the court distinguished the drag racing scenario from previous scenarios in two other cases involving car accidents "'occasioned' by the criminal act of a plaintiff's drunk

7

driving." *Id.* at 175. One such previous case, *Humphrey v. State of N.Y.*, 457 N.E.2d 767, 768 (N.Y. 1983), involved a decedent motorist's estate that sued the State of New York for wrongful death. Although the decedent in *Humphrey* was driving intoxicated, the trial court found that the State of New York was 60% at fault for failing to provide adequate warning of the highway conditions. *Id.* In affirming the judgment, the appellate court concluded that "[t]he fact that decedent's ability to drive was impaired does not exonerate the State from liability[.]" *Id.* The second case was *Clark v. State of N.Y.*, 508 N.Y.S.2d 648 (App. Div. 1986), which involved a motorist that sued the state for injuries suffered when she crashed into a defective guardrail. Although the trial court found that the plaintiff hit the guardrail because she was driving intoxicated, it found the State one hundred percent liable for her injuries. *Id.* at 649. The appellate court reversed, concluding that the plaintiff's award should have been reduced—though not eliminated—by allocating part of the plaintiff's damages to her own fault in driving intoxicated. *Id.* The appellate court explained, "Without the confluence of the [s]tate's negligence and [the plaintiff's] negligence in operating her vehicle while intoxicated and failing to negotiate a curve . . . the accident and [the plaintiff's] unfortunate injuries would not have occurred. Each party's negligence was a substantial factor and, therefore, a proximate cause of the ultimate harm." *Id.*

{12}    Even if this Court agreed with Defendant and adopted New York's analysis of

8

whether an intoxicated driver can recover against another party in a negligence action, we conclude that the judgment entered by the district court would be affirmed. Like New York, New Mexico has adopted a comparative fault analysis of tort claims. *See Scott v. Rizzo*, 1981-NMSC-021, ¶ 22, 96 N.M. 682, 634 P.2d 1234 (adopting the comparative fault rule), *superseded in part by statute*, NMSA 1978, § 41-3A-1 (1987), *as recognized in Reichert v. Atler*, 1992-NMCA-134, ¶ 34, 117 N.M. 628, 875 P.2d 384. Thus, we agree with the court in *Alami* that extension of the unlawful acts rule in this case "would abrogate [judicially and] legislatively mandated comparative fault analysis in a wide range of tort claims." 766 N.E.2d at 577. Like the circumstances in *Alami,* when Defendant in this case ran a red light and crashed into a vehicle that had the right-of-way, Defendant breached an established duty, irrespective of whether the driver of the vehicle he crashed into was intoxicated. Plaintiff did not seek to profit from any impairment to his driving, but only that Defendant honor his well-recognized duty to stop at an intersection displaying a red light. *See id.* at 577 (recognizing and distinguishing the separate duties imposed upon each party that reasonably contribute to an accident). Our conclusion is also consistent with the reasoning in *Humphrey* and *Clark*. *See Humphrey*, 457 N.E.2d at 768 ("The fact that [the plaintiff's] ability to drive was impaired does not exonerate the [defendant] from liability[.]"); *Clark*, 508 N.Y.S.2d at 649 ("Without the

9

confluence of the [defendant's] negligence and [the plaintiff's] negligence in operating h[is] vehicle while intoxicated . . . the accident and [the plaintiff's] unfortunate injuries would not have occurred. Each party's negligence was a . . . factor and, therefore, a proximate cause of the ultimate harm.").

{13}    Finally, our conclusion is consistent with at least one treatise that has considered the effect of a plaintiff's unlawful act in connection with his or her negligence action:

> The plaintiff's violation of [a] statute is ordinarily relevant, of course, as showing [his or] her negligence, but not as forbidding the claim entirely. The fact that the plaintiff is guilty of contributory negligence per se in violating a statute shows negligence but it does not show how much, so a comparison of the plaintiff's per se fault and the defendant's negligence is still appropriate.

1 Dan B. Dobbs et al., *The Law of Torts* § 228, at 818 (2d ed. 2011). For all of these reasons, we conclude—the fact that Plaintiff's blood-alcohol content was .076 at the time Defendant ran the red light and struck the Plaintiff's vehicle does not preclude Plaintiff from recovering damages attributed to Defendant's comparative negligence.

**B.    Seat Belt Non-Use**

**1.    Statutory Interpretation of Section 66-7-373(A)**

{14}    Defendant asserts that the district court erred when it concluded that Section 66-7-373(A) barred it from considering the fact that Plaintiff was not wearing a seat belt in determining Plaintiff's comparative negligence. Section 66-7-373(A) provides,

10

in pertinent part, "Failure to be secured . . . by a safety belt as required by the Safety Belt Use Act shall not in any instance constitute fault or negligence and shall not limit or apportion damages." Defendant contends that Section 66-7-373(A)'s language "only forecloses parties from invoking the statute to establish negligence *per se*[,]" and that "[i]t does not foreclose the assertion that seat belt non-use constitutes comparative negligence at common law." We disagree.

{15}     We review the interpretation of a statute de novo. *Chatterjee v. King*, 2012-NMSC-019, ¶ 11, 280 P.3d 283. In construing a statute, we determine the Legislature's intent by giving effect to its entire text in accordance with its objective and purpose. NMSA 1978, § 12-2A-18(A) (1997). We do not give effect to the Legislature's intent by reading a statute in a way that would render it meaningless. *City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 23, 141 N.M. 686, 160 P.3d 595. "We presume that the [L]egislature is well informed as to existing statutory and common law and does not intend to enact a nullity[.]" *Inc. Cnty. of Los Alamos v. Johnson*, 1989-NMSC-045, ¶ 4, 108 N.M. 633, 776 P.2d 1252.

{16}     Our Supreme Court adopted the comparative fault doctrine in 1981. *See Scott*, 1981-NMSC-021, ¶ 22. In November 1984, this Court concluded that a plaintiff's damages caused by his failure to wear a seat belt could be considered under a comparative fault analysis. *Thomas v. Henson*, 1984-NMCA-113, ¶ 24, 102 N.M.

11

417, 696 P.2d 1010, *rev'd in part by* 1985-NMSC-010, 102 N.M. 326, 695 P.2d 476. Our Supreme Court swiftly reversed that portion of our *Thomas* decision, holding that no common law "seat belt defense" existed in New Mexico and that the creation of such a defense was within the purview of the Legislature. 1985-NMSC-010, ¶ 4. Within weeks of the Supreme Court's decision in *Thomas*, the Legislature enacted the Safety Belt Use Act, which created a statutory duty to wear a seat belt. *See* 1985 N.M. Laws, ch. 131, §§ 1-4. However, in doing so, the Legislature could not have been clearer when it included a provision stating that breaching the statutory duty to wear a seat belt "*shall not in any instance constitute fault or negligence and shall not limit or apportion damages*." 1985 N.M. Laws, ch. 131, § 4 (emphasis added) (now codified at § 66-7-373(A)). We presume that, at the time that it enacted this new statutory provision, the Legislature was aware of our Supreme Court's adoption of comparative fault for tort claim lawsuits and of both this Court's and our Supreme Court's decisions in *Thomas*. *See Johnson*, 1989-NMSC-045, ¶ 4 (recognizing the presumption that the Legislature is aware of existing legal precedent). However unreasonable it may seem from the contemporary view of comparative fault, commentators recognize that numerous states have enacted statutes barring the consideration of seat belt non-use from the comparative fault analysis:

> In the light of safety factors involved, the plaintiff's failure to wear an available seat[]belt or safety harness may be quite unreasonable. Today,

with pervasive seat[]belt use and statutes requiring it, failure to wear a seat[]belt certainly could count as comparative fault. However, this result is barred by many state statutes.

1 Dobbs, *supra*, § 231, at 827. If we were to conclude, as Defendant urges, that Section 66-7-373(A) does not bar consideration of an injured plaintiff's failure to wear a seat belt in a comparative fault analysis, then a plaintiff's failure to wear a seat belt would almost certainly "constitute fault or negligence" resulting in "limit[ing] or apportion[ing]" a plaintiff's damages. Section 66-7-373(A). Such an interpretation would render the relevant portion of Section 66-7-373(A) meaningless and a nullity. *See Johnson*, 1989-NMSC-045, ¶ 4; *see also Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 23. Therefore, we agree with the district court that Section 66-7-373(A) bars consideration of seat belt non-use in a comparative fault analysis of liability.

**2.     Constitutional Arguments**

{17}     Defendant asserts that if Section 66-7-373(A) bars consideration of seat belt non-use in a comparative fault analysis, we should conclude that Section 66-7-373(A) is unconstitutional because it violates the separation of powers doctrine set forth in Article IV, Section 34 of the New Mexico Constitution and it violates Defendant's due process and equal protection rights. We are not persuaded.

{18}     Article IV, Section 34 of the New Mexico Constitution provides that "[n]o act

13

of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." The purpose of this provision is to "prevent legislative interference with adjudication of *pending cases*." *Brazos Land, Inc. v. Bd. of Cnty. Comm'rs*, 1993-NMCA-013, ¶ 14, 115 N.M. 168, 848 P.2d 1095 (emphasis added.) "The term 'pending case' ordinarily refers to a suit pending on some court's docket and does not include a suit filed after the statute became effective[.]" *DiMatteo v. Cnty. of Dona Ana*, 1989-NMCA-108, ¶ 13, 109 N.M. 374, 785 P.2d 285. The provision now codified at Section 66-7-373(A) was first enacted in 1985, removed by amendment in 1991, re-enacted in 1993, and has remained effective without interruption ever since. *See Mott v. Sun Country Garden Prods., Inc.*, 1995-NMCA-066, ¶¶ 8-9, 120 N.M. 261, 901 P.2d 192 (explaining the history of Section 66-7-373(A)). In this case, Plaintiff's cause of action against Defendant arose in 2012. Therefore, because Section 66-7-373(A) was effective for nearly two decades prior to 2012, Article IV, Section 34 of the New Mexico Constitution does not apply to Plaintiff's claim. *See DiMatteo*, 1989-NMCA-108, ¶ 13.

{19}     As to Defendant's remaining constitutional arguments, this Court has previously considered and rejected those arguments in *Mott* and we are not persuaded to revisit this precedent. *See* 1995-NMCA-066, ¶¶ 14-21 (concluding that Section 66-7-373(A) does not violate the separation of powers doctrine or the defendant's due

14

process or equal protection rights). Therefore, we shall proceed to address Plaintiff's remaining arguments.

**C.     Collateral Source Rule**

{20}     Generally, "plaintiffs may not collect more than the damages awarded to them, or, put another way, they may not receive compensation twice for the same injury." *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op*, 2013-NMSC-017, ¶ 47, 301 P.3d 387. "However, the collateral source rule is an exception to the [general] rule against double recovery." *Id.* ¶ 48. This rule states that compensation received from a collateral source, i.e., a third party, "does not operate to reduce damages recoverable from a wrongdoer." *Id.* (internal quotation marks and citation omitted). The policy behind this rule is that "the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted." *Id.* ¶ 50 (internal quotation marks and citation omitted). One justification for this rule is that third parties will be more likely to help injured persons if they know they are likely to be reimbursed. *Id.* ¶ 49. "Charity cannot be made a substitute for such right, nor can benevolence be made a set-off against the acts of a [tortfeasor]." *Id.* (internal quotation marks and citation omitted). Where a third party who helps an injured person does not seek full reimbursement, "the collateral source rule [in New Mexico] dictates that the contribution of a collateral source must operate to benefit the plaintiff

15

rather than the defendant." *Id.* ¶ 50.

{21} Defendant argues that the collateral source rule should not apply in this case because both Plaintiff and Defendant were wrongdoers in that they both drove impaired and Plaintiff additionally failed to wear his seat belt. Because Defendant provides no authority for the proposition that the collateral source rule does not apply where the plaintiff in a negligence action shares some degree of fault for his injuries, we decline to review this argument on appeal. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citation omitted)).

**D.    Medical Costs Award**

{22} Defendant argues that Plaintiff's settlement agreement with the hospital "represents either a *de facto* or *de jure* medical damages cap in this case" and this Court should "remand with instructions . . . to reduce the medical damages award . . . to $37,308.21[,]" representing one-third of the hospital's $111,924.63 bill. He argues that, because Plaintiff's settlement agreement with the hospital did not result in the hospital being reimbursed for Defendant's entire $111,924.63 hospital bill in this

case, the judgment awarding Plaintiff the full amount of his medical bills provides Plaintiff with a "windfall[.]" Again, Defendant does not cite any authority in support of his argument. *See id.* (explaining that the appellate courts will not research for authority supporting a position where no cited authority is provided in the briefing). Instead, Defendant refers us to the record for a motion he filed in the district court that purportedly contains "ample support for his argument in the general case law on the subject" and a law review article that "examine[s] the general issues of medical billing in America." We decline to consider such an argument because he does not cite any authority to support it in his brief in chief. *See* Rule 12-213(A)(4) NMRA.

**CONCLUSION**

{23}     For the foregoing reasons, we affirm the judgment entered by the district court.

{24}     **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**M. MONICA ZAMORA, Judge**