**Certiorari Granted, January 7, 2013, No. 33,924**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-012**

**Filing Date: October 29, 2012**

**Docket No. 30,927**

**AMERICAN FEDERATION OF STATE,**
**COUNTY AND MUNICIPAL EMPLOYEES,**
**(AFSCME) COUNCIL 18, AFL-CIO, CLC,**
**AFSCME LOCAL 1888, AFSCME LOCAL**
**3022, AFSCME LOCAL 624, and AFSCME**
**LOCAL 2962,**

       **Plaintiffs-Appellants,**

**v.**

**CITY OF ALBUQUERQUE,**

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Marianne Bowers
Albuquerque, NM

for Appellants

Conklin, Woodcock & Ziegler, P.C.
Robin A. Goble
Albuquerque, NM

David Tourek, City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Albuquerque, NM

for Appellee

1

**WECHSLER, Judge.**

**{1}**     This appeal results from the breakdown in negotiations of collective bargaining agreements between Plaintiffs American Federation of State, County and Municipal Employees (AFSCME) Council 18, AFL-CIO, CLC, AFSCME Local 1888, AFSCME Local 3022, AFSCME Local 624, and AFSCME Local 2962 (the Unions) and Defendant City of Albuquerque (the City) to succeed ones that had expired.  We hold that the failure of the City's Labor Management Relations Ordinance (LMRO), Albuquerque, N.M. Code of Ordinances, ch. 3, art. 2, §§ 3-2-1 to -18 (2003, as amended through 2005) (Abq. Ord.) to include provisions for binding impasse arbitration does not preclude the LMRO from grandfather status under the Public Employee Bargaining Act (the PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2005).  We also hold that in this case the PEBA enforcement of an existing collective bargaining agreement in the event of impasse (the PEBA evergreen clause) is subject to the requirements of appropriation and availability of funds under the PEBA and that the complaint was moot with respect to unions that had reached collective bargaining agreements with the City.  We affirm.

## BACKGROUND

**{2}**     The Unions are the exclusive bargaining representatives for employees of the City. Because existing collective bargaining agreements were to expire on June 30, 2010, they engaged in negotiations with the City under the LMRO to replace the existing collective bargaining agreements.  During the negotiations, the Unions brought suit, asking the district court to declare that the LMRO violates the PEBA because the LMRO does not contain impasse arbitration and evergreen provisions that are required by the PEBA.

**{3}**     On June 30, 2010, the Unions filed a motion for a temporary restraining order and preliminary injunction to continue the expiring collective bargaining agreements until new agreements were reached.  The district court granted partial injunctive relief, continuing the agreements with certain exceptions until a full evidentiary hearing before the court.

**{4}**     The parties then filed cross-motions for summary judgment.  The district court denied the Unions' motion and granted summary judgment in favor of the City. Following *City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, 141 N.M. 686, 160 P.3d 595, the district court concluded that the grandfather clause of the PEBA, Section 10-7E-26(A), applies to the LMRO's collective bargaining provisions.  The district court also granted the City's motion to dismiss Local 1888 and Local 3022 because they reached new agreements with the City, and their claims in the complaint were therefore moot.

## GRANDFATHER STATUS OF LMRO IMPASSE PROCEDURES

**{5}**     On appeal, the Unions argue that the district court erred in not ruling that (1) the

impasse procedure of the LMRO violates the PEBA and (2) the lack of an evergreen clause in the LMRO violates the PEBA. The City counters that the district court properly concluded that the PEBA requirements do not apply because the LMRO is entitled to grandfather status under the PEBA.

**{6}** Generally, we review a district court's grant of summary judgment under de novo review. *Vill. of Wagon Mound v. Mora Trust*, 2003-NMCA-035, ¶ 57, 133 N.M. 373, 62 P.3d 1255. Specifically, in this case, we review the district court's interpretation of the PEBA as a question of law subject to de novo review. *See City of Deming*, 2007-NMCA-069, ¶ 6 ("To decide whether the grandfather clause applies, we must interpret the PEBA and make a determination of law."). "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992).

**{7}** The PEBA was designed "to guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions." Section 10-7E-2. It grants most public employees the right to "form, join or assist a labor organization for the purpose of collective bargaining through representatives chosen by public employees." Section 10-7E-5. It sets forth various provisions and procedures to comply with its collective bargaining requirement. As pertinent to this case, the PEBA requires public employers other than the State of New Mexico and exclusive representatives to follow impasse procedures that include mediation and binding arbitration, unless the public employers and the exclusive representatives agree in writing to an alternative procedure. Section 10-7E-18(B), (C). In addition, the PEBA requires, in the event of impasse, that the existing contract "continue in full force and effect until it is replaced by a subsequent written agreement." Section 10-7E-18(D).

**{8}** The PEBA's grandfather clause reads

> A public employer other than the state that prior to October 1, 1991 adopted by ordinance, resolution or charter amendment a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives may continue to operate under those provisions and procedures. Any substantial change after January 1, 2003 to any ordinance, resolution or charter amendment shall subject the public employer to full compliance with the provisions of Subsection B[.]

Section 10-7E-26(A). Section 10-7E-26(B)(8) requires any such public employer making a substantial change to include within the change specific provisions and procedures, including "impasse resolution procedures equivalent to those set forth in" Section 10-7E-18. Thus, the PEBA's grandfather clause has two requirements: (1) that a public employer have

3

adopted "a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives" and (2) that the public employer has done so prior to October 1, 1991. Section 10-7E-26(A); *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 34, 125 N.M. 401, 962 P.2d 1236; *City of Deming*, 2007-NMCA-069, ¶ 9.

**{9}** The City originally adopted the LMRO in 1977 and last amended it in 2002. The purposes of the LMRO are similar to those in the PEBA, including allowing employees of the City "to organize and bargain collectively with" the City. Abq. Ord. § 3-2-2(A). It contains various provisions and procedures that control the collective bargaining relationship of the City and the Unions. Abq. Ord. §§ 3-2-1 to -18. It does not, however, contain binding arbitration or evergreen provisions.

**{10}** Our Supreme Court discussed the purposes of grandfather clauses in *Regents*, 1998-NMSC-020, ¶¶ 23-28, a case involving the prior version of the PEBA. It observed that the effect of grandfather clauses is to "narrow, qualify, or otherwise restrain the scope of the statute" or to "remove from the statute's reach a class that would otherwise be encompassed by its language." *Id.* ¶ 24. As the Court stated, "[a] grandfather clause preserves something old, while the remainder of the law of which it is a part institutes something new." *Id.* ¶ 25. It further noted that grandfather clauses should be construed strictly or narrowly and with the purpose of giving effect to the Legislature's intent. *Id.* ¶¶ 27, 48.

**{11}** This Court acknowledged those purposes in addressing impasse procedures in *City of Deming*, 2007-NMCA-069, ¶ 23. In that case, we held that the PEBA's grandfather clause applied to an ordinance provision that addressed impasse through advisory arbitration. *Id.* ¶ 24. We reversed the district court that had denied grandfather status because "the advisory arbitration impasse procedure of the ordinance did not provide any more than the right to petition the government and thus was not a meaningful opportunity to engage in collective bargaining." *Id.* ¶ 19 (internal quotation marks omitted).

**{12}** The Unions make similar arguments in this case. The impasse provision of the LMRO calls for mediation at the request of a party, and, if the mediation fails, binding arbitration only upon voluntary agreement of the parties. Abq. Ord. § 3-2-14(A), (B). The LMRO does not contain an evergreen provision. The Unions contend that, by failing to provide binding impasse resolution procedures and evergreen protection, the LMRO does not provide "a system allowing employees to form, join or assist a Union in 'collective bargaining' as required by [the] PEBA."

**{13}** We understand the Unions' position to be that because the provisions and procedures of the LMRO do not require binding arbitration and include evergreen provisions, the LMRO does not satisfy the "collective bargaining" requirement for grandfather status. The Unions contend that without a procedure for finality in the event of impasse a collective bargaining process is meaningless. They reason that the Legislature did not intend to extend grandfather status to such a process.

4

**{14}** However, the Unions' argument attaches an additional requirement to the PEBA's grandfather clause. For ordinances adopted before October 1, 1991, the PEBA's grandfather clause requires only that the system adopted permit "employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives." Section 10-7E-26(A). The PEBA defines "collective bargaining" as "the act of negotiating between a public employer and an exclusive representative for the purpose of entering into a written agreement regarding wages, hours and other terms and conditions of employment[.]" Section 10-7E-4(F). The Unions' argument demands that we evaluate the effectiveness of the LMRO as an avenue for collective bargaining. The PEBA does not include this requirement. *See City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 21, 274 P.3d 108 (holding that the LMRO selection procedure for appointment of local board members "does not violate the definition of collective bargaining under" the PEBA).

**{15}** The evolution of the PEBA assists in our analysis. It was originally enacted in 1992 and was effective until 1999. It was reenacted in 2003. The original version of the PEBA, effective from 1992 to 1999, included language that granted grandfather status to public employers other than the state or a municipality only if the public employer's "ordinance, resolution or charter amendment has resulted in the designation of appropriate bargaining units, the certification of exclusive bargaining agents and the negotiation of existing collective bargaining agreements." NMSA 1978, § 10-7D-26(B) (1992) (repealed 1999). This language, which contained an effectiveness component necessary for grandfather status for public employers other than the state and municipalities, was removed by the Legislature when it reenacted the PEBA in 2003. Section 10-7E-26. We glean from the removal of this language and the absence of any language concerning quality or effectiveness in the current PEBA that the Legislature intended that a public employer's system of provisions and procedures permitting collective bargaining would not be subject to that type of scrutiny to achieve grandfather status. *See El Paso Elec. Co. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-048, ¶ 16, 149 N.M. 174, 246 P.3d 443 (stating that when the Legislature expressly removed part of a definition in a statute, the removed portion is outside the scope of the statute).

**{16}** In addition, as we discussed in *City of Deming*, the original version of the PEBA did not require binding arbitration; it required only advisory mediation. NMSA 1978, § 10-7D-18(B)(1) (1992) (repealed 1999); *City of Deming*, 2007-NMCA-069, ¶ 22. Other than to eliminate the effectiveness component discussed above that did not relate to municipalities and to address substantial changes after January 1, 2003, the grandfather clause did not change on reenactment. *Compare* § 10-7E-26 and § 10-7D-26 (1992) (repealed 1999). Significantly, the Legislature did not add a requirement that binding arbitration to resolve impasse was necessary for grandfather status.

**{17}** Also significant to our analysis is that the Legislature did include requirements for compliance with the PEBA in both versions of the PEBA but only if a public employer other than the state adopts a system of provisions and procedures permitting collective bargaining after October 1, 1991. In such instances, the grandfather clause does require for grandfather

5

status, among other provisions and procedures consistent with the PEBA, that the newly adopted system include "impasse resolution procedures equivalent to those set forth in" the PEBA. Section 10-7E-26(B)(8); Section 10-7D-26(C) (1992) (repealed 1999). The Unions' argument would extend this requirement to systems adopted by public employers other than the state prior to October 1, 1991. But the Legislature specifically did not include any such requirement for public employers adopting ordinances prior to October 1, 1991. Section 10-7E-26.

**{18}** The Unions would limit *City of Deming* to its facts in which the city's labor relations ordinance, which, although it did not provide for binding arbitration, required arbitration in which the arbitrator issues an opinion to the city council, which then renders a final, binding decision. *See City of Deming*, 2007-NMCA-069, ¶ 3. While we agree with the Unions that the impasse procedure considered in *City of Deming* may be more effective in resolving an impasse because there is a conclusion built into the procedure, the effectiveness of the procedure in *City of Deming*, or its closer compliance to the PEBA than the LMRO, was not part of the *City of Deming* analysis.

**{19}** Rather, as we discussed in *City of Deming*, we interpret the PEBA's grandfather clause to effectuate legislative intent. *City of Deming*, 2007-NMCA-069, ¶ 23. As fully discussed in *Regents*, the grandfather clause preserves "something old, while the remainder of the law of which it is a part institutes something new." *Regents*, 1998-NMSC-020, ¶ 25; *see City of Deming*, 2007-NMCA-069, ¶ 23. In reenacting the PEBA, the Legislature preserved efforts by public employers to adopt systems of provisions and procedures permitting collective bargaining while enacting a new law that applied when grandfather status did not apply. The Legislature did not limit grandfather status to public employers adopting ordinances prior to October 1, 1991 in the way it did for later actions. Although the procedures under the PEBA providing binding arbitration to resolve impasse are more effective in concluding disputes, the PEBA does not require that the LMRO, adopted prior to October 1, 1991, contain such procedures in order to receive grandfather status. The failure of the LMRO to provide for binding-impasse arbitration does not preclude the LMRO from grandfather status under the PEBA.

**APPLICATION OF THE EVERGREEN PROVISION**

**{20}** The PEBA evergreen clause requires expiring collective bargaining agreements to continue until replacement agreements are in place. Section 10-7E-18(D). The LMRO does not contain an evergreen provision. The Unions argue on appeal that the LMRO violates the PEBA because it does not have an evergreen provision and that "the LMRO should be deemed to contain" an evergreen provision.

**{21}** The district court held that the PEBA evergreen clause does not apply to the economic components of the existing agreements in part because the evergreen clause "is subject to the requirements of appropriation and availability of funds under Section 10-7E-17(E)" of the PEBA. That section, in pertinent part, provides that "[a]n impasse resolution

6

or an agreement provision [of a collective bargaining agreement] by a public employer other than the state or the public schools and an exclusive representative that requires the expenditure of funds shall be contingent upon the specific appropriation of funds by the appropriate governing body and the availability of funds." Section 10-7E-17(E).

{22}   Important to the Unions' appeal are the arguments that are not before us concerning the evergreen clause. In the district court, the City did not argue, as it does on appeal, that the grandfather clause of the PEBA applies to the LMRO with respect to the LMRO's silence concerning evergreen status. Indeed, the district court noted that the City agreed that the PEBA evergreen clause applied to it, subject to the City's arguments that the Bateman Act and the LMRO trump the requirements of the evergreen provision. Although the district court also relied upon the Bateman Act in its decision, we do not discuss this argument because Section 10-7E-17(E) sufficiently supports the district court's decision. We do not address the City's grandfather clause argument because the City did not raise it before the district court. Additionally, the Unions did not argue below, and do not argue on appeal, that the PEBA does not apply to the City in every respect. Significantly, no argument has been made that, even if the impasse resolution procedures of the LMRO are entitled to grandfather status, Section 10-7E-17(E) of the PEBA does not apply to the City. *Regents*, 1998-NMSC-020, ¶ 35 (stating that grandfather clauses should be construed strictly or narrowly). Indeed, *Regents* instructs that the requirements for grandfather clause status be construed narrowly, analyzing portions of a public employer's policy separately. *Id.*

{23}   On the record before us, we thus conclude that Section 10-7E-17(E) applies to economic components of the extension of the expired collective bargaining agreements under the PEBA evergreen provision. Under Section 10-7E-17(E), agreement provisions that require the expenditure of funds are subject to "the specific appropriation of funds" and "the availability of funds." *See Int'l Ass'n of Firefighters v. City of Carlsbad*, 2009-NMCA-097, ¶¶ 1, 16, 147 N.M. 6, 216 P.3d 256 (holding that Section 10-7E-17(E) prevails over a binding arbitration award issued pursuant to Section 10-7E-18(B)(2)). It is not an issue whether the City appropriated funds for or during the term of the agreements. No City appropriation has occurred to extend the agreements, and the City contends that it does not have available funds to fund the economic components of the extension. The PEBA leaves that determination to the legislative functions of the public employer. The PEBA does not require the extension of existing collective bargaining agreements in conflict with Section 10-7E-17(E).

**MOOTNESS WITH RESPECT TO AFSCME LOCAL 1888 AND AFSCME LOCAL 3022**

{24}   While this lawsuit was pending, AFSCME Local 1888 and AFSCME Local 3022 entered into new contracts with the City. The Unions contend that the district court improperly granted the City's motion to dismiss the two unions as moot. We address the issue under de novo review. *Garcia v. Dorsey*, 2006-NMSC-052, ¶ 13, 140 N.M. 746, 149 P.3d 62.

**{25}** We test for mootness by determining whether an actual controversy exists. *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 16, 124 N.M. 640, 954 P.2d 72. Our Supreme Court has stated "[t]he prerequisites of actual controversy . . . in a declaratory judgment action are: a controversy involving rights or other legal relations of the parties seeking declaratory relief; a claim of right or other legal interest asserted against one who has an interest in contesting the claim; interests of the parties must be real and adverse; and the issue . . . must be ripe for judicial determination." *Id.* (internal quotation marks and citation omitted).

**{26}** The Unions argue that an actual controversy continues to exist despite the new agreements because the new agreements will expire in the next two years. Secondarily, they contend that, even assuming an actual controversy no longer exists, this case presents an issue of public interest that is likely to reoccur. They rely on *Bradbury & Stamm Construction v. Board of County Commissioners of Bernalillo County*, 2001-NMCA-106, ¶¶ 10-11, 131 N.M. 293, 35 P.3d 298. In that case, the plaintiff had claimed that the county had improperly declined to apply a statutory residential preference in the bidding on a construction project. *Id.* ¶¶ 2-4. The district court ruled for the plaintiff, and the county granted the plaintiff the bid because it disqualified the low bidder, not because of a residential preference. *Id.* ¶¶ 5-6. This Court determined that, although there no longer appeared to be an actual controversy concerning the residential preference statute, it nevertheless denied the plaintiff's motion to dismiss the appeal as moot because the issue was of substantial public importance that "may well reoccur[.]" *Id.* ¶ 12.

**{27}** Although *Bradbury & Stamm* does not indicate that an actual controversy continues to exist in this case, it does address the Unions' secondary position. However, in *Bradbury & Stamm*, the issue "may well" have reoccurred if the Court did not decide the issue between the parties before it. In this case, the issues raised by AFSCME Local 1888 and AFSCME Local 3022 are the same issues raised by the other unions, and the Court is deciding the issues.

**CONCLUSION**

**{28}** The PEBA grandfather clause applies to the LMRO impasse resolution procedures notwithstanding the failure of the LMRO to require binding arbitration to resolve impasse. The PEBA evergreen clause does not apply to the economic components of the existing collective bargaining agreements, at least in the manner in which this case was argued, because of the PEBA's requirements that provisions of collective bargaining agreements that require an expenditure of funds are subject to the "specific appropriation of funds" and "the availability of funds" in Section 10-7E-17(E). The complaint was moot with respect to AFSCME Local 1888 and AFSCME Local 3022. We affirm.

**{29}    IT IS SO ORDERED.**

_____

8

**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring)**

**GARCIA, Judge (specially concurring).**

**{30}**     I agree that the language in *City of Deming*, 2007-NMCA-069, ¶¶ 22-24, appears to control our decision in this case. I write to specially concur because the broad language in *City of Deming* appears to extend the current version of the PEBA into situations where the resolution of an impasse in a collective bargaining agreement is never required. *Id.* Such a situation actually exists under the facts in this case. Unlike *City of Deming*, the LMRO has no provision to finally resolve the impasse that arose under the collective bargaining process between AFSCME and the City. Majority Opinion ¶ 9.

**{31}**     The original version of the PEBA only required advisory mediation to resolve an impasse in collective bargaining negotiations. Section 10-7D-18(B) (1992) (repealed 1999). The current version does require a final resolution of any impasse by binding arbitration. Section 10-7E-18. *City of Deming* continues to allow ordinances that are only consistent with the non-binding impasse resolution provisions of the original version of the PEBA rather than the current version of the PEBA that requires a binding resolution. 2007-NMCA-069, ¶¶ 20-22. If the ultimate resolution of an impasse is now required under the current version of the PEBA in order for its grandfather clause to also apply, then *City of Deming* needs to be appropriately addressed anew.

**{32}**     Presently, *City of Deming* allows the unchanged version of Section 10-7E-26(A) to continue to apply under either version of the PEBA statutory scheme. 2007-NMCA-069, ¶ 22. If this Court has failed to properly construe the strict and narrow construction of the statutory grandfather clause in light of the overall purposes and intent set forth in the current version of the PEBA, then *City of Deming* needs to be narrowed accordingly. *See Regents*, 1998-NMSC-020, ¶¶ 23-28 (giving effect to the Legislative intent regarding grandfather clauses under the prior version of the PEBA that did not mandate a final impasse resolution procedure through binding arbitration). The Supreme Court has not yet addressed whether the purposes of the current version of the PEBA require a more strict and narrow construction of the grandfather clause in the PEBA.

_____

**TIMOTHY L. GARCIA, Judge**

9

**Topic Index for *AFSCME Council 18 v. City of Albuquerque*, No. 30,927**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Mootness
Summary Judgment

**EMPLOYMENT LAW**
Collective Bargaining
Fair Labor Standards Act
Labor Unions

**GOVERNMENT**
Public Employees

**STATUTES**
Interpretation
Legislative Intent