**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: August 29, 2013

Docket No. 31,606 (consolidated with Docket No. 31,632)

ALBUQUERQUE POLICE OFFICERS'
ASSOCIATION, JOEY SIGALA, FELIPE
GARCIA, TOM NOVICKI, and MATT
FISHER,

       Plaintiffs-Appellants,

v.

CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
and MAYOR RICHARD BERRY,

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay P. Campbell, District Judge**

Sanchez, Mowrer & Desiderio, P.C.
Frederick M. Mowrer
Albuquerque, NM

Rose Bryan, P.C.
Rose Bryan
Albuquerque, NM

for Appellants

David Tourek, City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Albuquerque, NM

Conklin, Woodcock & Ziegler, P.C.
Robin A. Goble
Albuquerque, NM

1

for Appellees

**OPINION**

**GARCIA, Judge.**

**{1}**     In this action alleging breach of a collective bargaining agreement, Plaintiffs, Albuquerque Police Officers' Association and select individuals (collectively, the Plaintiffs shall be referred to as APOA), appeal from a summary judgment entered in favor of Defendants, City of Albuquerque, Albuquerque Police Department, and Mayor Richard Berry (the Mayor) (collectively the Defendants shall be referred to as the City). This dispute concerns APOA's contention that the City violated the parties' multi-year collective bargaining agreement (CBA) when it failed to implement the final phase of a salary increase for police officers set forth in the CBA. We reverse.

**BACKGROUND**

**{2}**     In 2008, the City and APOA executed the CBA running from July 1, 2008 through June 30, 2011. The CBA covered many areas including provisions related to salary, hours, and conditions of employment. The salary schedule provided for annual raises based on employee rank within the police department at the time the annual raises were to take effect. In addition, the CBA contained a provision that provided compensation increases for the second and third fiscal years, contingent upon City Council approval as set forth in Section 3-2-18 of the City's Labor Management Relations Ordinance (LMRO). Albuquerque, N.M., Code of Ordinances ch. 2, art. II, § 3-2-18 (2002). Section 3-2-18 provides that:

> Any contract between the [C]ity and an employee organization, which contains provisions that result in expenditures greater than the amount appropriated for wages and benefits in an adopted city budget for the initial fiscal year of the contract or which contains a multi-year commitment shall require the review and approval by the City Council.  In order for any contract to be approved by the City Council, the City Council must approve the economic components of the contract through an executive communication and **adopt a resolution providing an appropriation** or deappropriation or both **to cover the cost of the contract**.  All such contracts shall contain re-opening language for economic items.

(Emphasis added.)

**{3}**     The City implemented the two salary increases contemplated by the contract during the 2009 and 2010 fiscal years. However, at the time of the April 1, 2010 submission of the Mayor's 2011 fiscal year budget proposal to the City Council, the City's department of finance and administrative services projected a budget shortfall of approximately $66.6 million. As a result of the revenue shortfall carrying into the fiscal year 2011 budget, City

2

revenues would only support an appropriation level of $455 million. This was $20 million less than the $475 million appropriation level previously anticipated for fiscal year 2011. The 2011 salary increases provided for in the CBA were expected to cost $9.8 million.

**{4}** Rather than risk increasing the City's unemployment rate through potential layoffs of City employees, the Mayor proposed to balance the budget by utilizing a sliding scale wage reduction plan for all City employees. The City Council adopted the Mayor's proposal to balance the budget, and enacted a budget for the 2011 fiscal year that did not include funding for CBA pay raises scheduled to begin on July 1, 2010.

**{5}** The APOA initiated this legal action challenging the City's failure to implement the negotiated annual salary increase for the 2011 fiscal year. APOA's breach of contract theory hinged on its allegations that, in approving the CBA in 2008, the City Council appropriated the funding to cover the entirety of the annual wage increases through fiscal year 2011, or that sufficient funding was appropriated and available for the City to comply with the CBA wage increases in fiscal year 2011. The City moved for summary judgment, arguing that the wage increases proposed in the CBA were contingent on annual appropriations made by the City Council. The district court agreed and granted summary judgment in favor of the City, finding that APOA did not raise an issue of material fact regarding whether the City appropriated funds to cover the entirety of the CBA in 2008 or had not appropriated sufficient available funds to comply with the CBA wage increases in fiscal year 2011. APOA timely appealed the district court's grant of summary judgment in favor of the City.

## STANDARD OF REVIEW

**{6}** Our review of summary judgment is de novo. *Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 12, 143 N.M. 320, 176 P.3d 309. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. "[W]e view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits[.]" *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879. "Summary judgment should not be granted when material issues of fact remain or when the facts are insufficiently developed for determination of the central issues involved." *Vieira v. Estate of Cantu*, 1997-NMCA-042, ¶ 17, 123 N.M. 342, 940 P.2d 190; *see Nat'l Excess Ins. Co. v. Bingham*, 1987-NMCA-109, ¶ 13, 106 N.M. 325, 742 P.2d 537 (noting that summary judgment is not appropriate where further factual resolution is essential for determination of the central legal issues involved).

**{7}** We review the district court's interpretation of the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2005), and local ordinances as questions of law and subject to de novo review. *Am. Fed'n of State, Cnty. & Mun. Emps., Council 18 v. City of Albuquerque*, 2013-NMCA-012, ¶ 6, 293 P.3d 943, *cert. granted*, 2013-NMCERT-001, 299 P.3d 863. "In construing a statute, our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil*

*Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (alteration, internal quotation marks, and citation omitted). "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236.

**DISCUSSION**

**{8}**    The requirements and obligations of the parties regarding the funding of a public employee collective bargaining agreement are statutorily controlled by the PEBA, the LMRO, and the specific terms of the parties' collective bargaining agreement. The PEBA was designed "to guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions." Section 10-7E-2. The purposes of the LMRO are similar to those in the PEBA, including allowing employees of the City "to organize and bargain collectively with" the City.  Albuquerque N.M., Ordinance § 3-2-2(A) (1977).

**{9}**    In this case, the City's expenditure of funds to comply with the CBA was subject to both "the specific appropriation of funds" and "the availability of funds" under Section 10-7E-17(E). Albuquerque N.M., Ordinance § 3-2-18. In pertinent part, Section 10-7E-17(E) requires "an agreement provision by a public employer other than the state . . . that requires the expenditure of funds shall be contingent upon the specific appropriation of funds by the appropriate governing body and the availability of funds." The language of the CBA recognized this limitation and specifically cited Section 3-2-18. The district court explained it was obvious that the funds were both available and appropriated for the annual salary increases for fiscal years 2009 and 2010 "simply because everybody has conceded that the raises were given in those two years[.]" For fiscal year 2011, the district court found that APOA raised a genuine issue of material fact with respect to the issue of "availability of the funds." It granted summary judgment in favor of the City, however, because it found that APOA failed to raise a genuine issue of material fact regarding the "specific appropriation of funds" to cover the 2011 fiscal year funding under the CBA.

**{10}**    On appeal, APOA contends that the district court erred in holding it failed to raise a material issue of fact regarding the City's "specific appropriation of funds" sufficient to fulfill the 2011 CBA increase. APOA argues that consistent with Section 3-2-18, the City Council passed the required resolution to appropriate sufficient funds to cover the entire term of the CBA at the time it was entered into and submitted in 2008. The City responded that it only appropriated the funds necessary to cover the annual costs in the CBA as part of each

4

year's budgeting cycle. The annual compensation commitments set forth in the CBA were subject to the approval of the City Council, as set forth in Section 2.1.1.5 of the CBA. However, the plain language of Section 3-2-18 of the LMRO, as referenced in Section 2.1.1.5 of the CBA, required the City Council to "adopt a resolution" appropriating funds to cover the economic components of the contract when the CBA was approved by the City in 2008. As such, we agree with APOA that the City adopted the appropriate resolution in 2008 to cover the economic obligation for the new three-year CBA.

**{11}**     Multi-year collective bargaining agreements are beneficial to both sides and provide stability and continuity for both management and public employees. Section 3-2-18 of the LMRO does not prohibit the City from adopting a contract that has fiscal implications over several years. As a fiscal protection to the City, the CBA and LMRO provide a vehicle to re-open the CBA to address "economic items." This re-opening requirement in Section 3-2-18 ensures that the City has a mechanism to address unexpected deficit spending or budgetary shortfalls that arise during the subsequent years of multi-year collective bargaining contracts. *See also* NMSA 1978, § 6-6-11 (1968) (prohibiting municipalities from contracting debt of any kind which cannot be paid out of the money actually collected and belonging to that current year). However, the City did not comply with the requirements of its own ordinance. Thus, subject to the City's absolute right to reopen the CBA for unexpected economic circumstances that occur, we construe the City Council's approval and resolution to establish a binding contractual obligation to provide the annual compensation for 2009, 2010, and 2011 that is set forth in the CBA.

**{12}**     The commitment to provide this compensation structure through the adoption of a City Council resolution was the only requirement under the LMRO. "[T]his rule furthers the [City's] own long-run interest as a reliable contracting partner in the myriad workaday transaction of its agencies." *State v. Am. Fed'n of State, Cnty. & Mun. Employees, Council 18*, 2012-NMCA-114, ¶ 29, 291 P.3d 600 (internal quotation marks and citation omitted), *cert. granted*, 2012-NMCERT-011, 297 P.3d 1227; *see Salazar v. Ramah Navajo Chapter*, 567 U.S.___, ___, 132 S.Ct. 2181, 2190 (2012) (explaining that under federal law, "[o]nce 'Congress has appropriated sufficient legally unrestricted funds to pay the contracts at issue, the Government normally cannot back out of a promise on grounds of 'insufficient appropriations,' even if the contract uses language such as 'subject to the availability of appropriations,' and even if an agency's total lump-sum appropriation is 'insufficient to pay *all* the contracts the agency has made'").

**{13}**     Subject to the City's right to reopen the contract, the parties to a multi-year collective bargaining agreement must be able to rely upon the negotiated terms of their initial agreement. As a result, APOA was entitled to the multi-year salary increases specifically set forth in the CBA and appropriated by the City Council's resolution in 2008. APOA submitted an affidavit as evidence that the City had sufficient available funds to fulfill the CBA contractual obligation at the time the promise was made and approved in 2008. Although the record reflects that the City also had sufficient funds to fulfill the 2011contractual obligation under the CBA when the Mayor proposed his budget for fiscal

year 2011, rather than reopen the CBA for economic reasons, the Mayor unilaterally chose to exclude the CBA salary increases from the proposed budget. The evidence indicated that the Mayor chose to breach the CBA contractual obligation in order to "share the burden so that no single class of employee shoulders an unfair share of the [City's budgetary shortfall,]" or otherwise increase the City's unemployment rate through layoffs. These reasons and goals do not legally justify a departure from the City's contractual obligation to reopen the CBA to address unexpected economic items. Under the appropriate standard of review, APOA, as the party opposing summary judgment, must be given the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists. *Skarda v. Skarda*, 1975-NMSC-028, ¶ 30, 87 N.M. 497, 536 P.2d 257.

{14}    APOA presented evidence that sufficient funds were available to fund all three years of the annual salary increases outlined in the CBA, and that the City Council adopted the required resolution to appropriate those funds in 2008 when it adopted and approved the CBA. The City also presented evidence that funds were available to pay the 2011 fiscal salary increase required under the CBA but the Mayor chose not to make the required allocation of those funds in his 2011 budget proposal for other policy reasons. Because the City did not exercise its right to reopening and renegotiate the economic terms of the CBA for fiscal year 2011, Section 3-2-18 does not permit the moneys available to pay the City's multi-year contractual obligations to be diverted to other programs and services. Thus, the factual issues presented by the parties do not support summary judgment in favor of the City.

**CONCLUSION**

{15}    Accordingly, the summary judgment decision of the district court is reversed. This matter is remanded to the district court for further proceedings.

{16}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**