This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37036**

**AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES
LOCAL 2499,**

      Plaintiff-Appellant,

v.

**BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Beatrice J. Brickhouse, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellant

W. Kenneth Martinez, County Attorney
Michael I. Garcia, County Attorney, Advanced
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Petitioner AFSCME Local 2499 (Union) appeals the district court's grant of summary judgment in favor of Respondent Board of County Commissioners of

Bernalillo County (County), which resulted in the dismissal of the Union's petition to enforce a disputed grievance settlement with the County. We reverse.

**BACKGROUND**

**{2}** The Union represents the Bernalillo County Correction Officers' Association (BCCOA), a bargaining unit of Metropolitan Detention Center employees. The Union and the County entered into a collective-bargaining agreement (CBA) in 2010. The CBA contained a "lockstep clause,"[1] which provides that if any other County employee received a wage increase during the life of the agreement, the same amount would be awarded to the BCCOA. In 2012, the County entered a new collective bargaining agreement with the International Association of Firefighters Local 244 that provided wage increases for three consecutive years to County firefighters. The County did not provide an equivalent wage increase to the BCCOA.

**{3}** BCCOA vice-president Eric Allen then submitted a grievance to the Chief of Corrections, Ramon Rustin, in accordance with the CBA's grievance procedures. Allen requested that the County award BCCOA members a wage increase equivalent to the one awarded to County firefighters. Rustin wrote "sustained" on the form under "disposition of grievance[.]" The Union took no further action, and under the terms of the CBA, the grievance was "deemed settled on the basis of the County's last response." Despite this resolution, BCCOA members never received a raise, and the Union brought suit to enforce the grievance settlement and compel the County to implement pay raises for BCCOA members.

**{4}** After three years of litigation and one jurisdictional appeal,[2] the County filed a motion for summary judgment. The County first argued that the settlement was statutorily precluded by Section 10-7E-17(E) of the Public Employee Bargaining Act (PEBA), NMSA 1978, Sections 10-7E-1 to -26 (2003, as amended through 2005), and by the Bateman Act, NMSA 1978, Section 6-6-11 (1968), both of which impose limitations on the County's expenditure of funds. *See* § 10-7E-17(E) (stating that impasse resolutions and agreement provisions that require the expenditure of funds are contingent on a specific appropriation of funds and the availability of funds); § 6-6-11 (stating that the Bateman Act forbids county officials from contracting municipal debt greater than what can "be paid out of the money actually collected" that current year). Second, the County argued that the grievance was not a settlement agreement under the CBA and was unenforceable because the Chief of Corrections does not have authority to grant a wage increase.[3]

---

1The parties refer to this clause as a "me-too" agreement.
2*See AFSCME Local 2499 v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, No. 34,431, mem. op. (N.M. Ct. App. Sept. 1, 2015) (non-precedential).
3The County also argued that the Union's claims were barred by res judicata, collateral estoppel, failure to exhaust administrative remedies, and election of remedies. The district court rejected these arguments, noting that it had previously addressed the preclusion argument in a post-remand opinion and order and that the County failed to demonstrate the doctrine of election of remedies is applicable here. We decline to consider these arguments because they are not well developed.

**{5}** In response, the Union argued that Section 10-7E-17(E) of the PEBA was inapplicable to the County because the County elected to operate under its own collective bargaining ordinance rather than the PEBA—an option that is specifically authorized by the PEBA's grandfather clause, Section 10-7E-26(A) (2003),[4] and exempts public employers from the PEBA's requirements. Additionally, the Union argued that the grievance settlement was enforceable under the terms of the CBA since the BCCOA followed the contractual grievance procedures and obtained a settlement agreement from the County's designated representative, the Chief of Corrections.

**{6}** The district court granted the County's motion for summary judgment and dismissed the case. The court reasoned that Section 10-7E-17(E) applied generally to economic components of the CBA, regardless of the grandfather status of the County's ordinance, such that the parties' settlement was subject to the appropriation and availability of funds. The court went on to conclude that the County and the Union could not have mutually assented to the terms of the grievance settlement because the County did not appropriate funds for the wage increase. Accordingly, the court ruled that there was no enforceable agreement between the Union and the County even though the Chief of Corrections sustained the Union's grievance. The Union appeals.

**DISCUSSION**

**I.      Standard of Review**

**{7}** We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the opposing party and drawing all reasonable inferences in support of a trial on the merits. *See Albuquerque Police Officers' Ass'n v. City of Albuquerque*, 2013-NMCA-110, ¶ 6, 314 P.3d 677. Summary judgment is proper only when there are no issues of material fact and the movant is entitled to judgment as a matter of law. *See id.* As well, "[w]e review the district court's interpretation of the [PEBA] and local ordinances as questions of law and subject to de novo review." *Id.* ¶ 7.

**II.     Section 10-7E-17(E) is Inapplicable Because the County Operates Under a Grandfathered Collective Bargaining Ordinance**

**{8}** The Union first argues that the district court erred in concluding that Section 10-7E-17(E) precluded enforcement of the parties' grievance resolution because the

---

[4]Section 10-7E-26 was repealed while this appeal was pending. *See* 2020 N.M. Laws, ch. 48, § 13. However, the statute was in effect at the time the case was initiated, and so we apply it here. *See Callahan v. N.M. Fed'n of Tchrs.-TVI*, 2006-NMSC-010, ¶ 2 n.1, 139 N.M. 201, 131 P.3d 51 (applying the version of PEBA in effect at the time of the relevant events); N.M. Const. art. IV, § 34 (stating that "[n]o act of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case"); *see also Carrillo v. My Way Holdings, LLC*, 2017-NMCA-024, ¶ 10, 389 P.3d 1087 (stating that "[a] case is considered 'pending' under Article IV, Section 34 once it is filed, or where the district court retains jurisdiction"). All citations to the PEBA in this case refer to the version of the Act in effect at the time this lawsuit was filed.

County operated under a grandfathered ordinance and was thus exempt from the PEBA's requirements. We agree.

**{9}** The PEBA was designed "to guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions." Section 10-7E-2. But the PEBA in effect at the time of the parties' lawsuit also included "an exemption for public employers, like the [County], that adopted a system of procedures for collective bargaining prior to October 1, 1991." *Am. Fed'n of State, Cnty. & Mun. Emps., v. City of Albuquerque*, 2013-NMCA-063, ¶ 6, 304 P.3d 443 (*AFSCME II*). This exemption is referred to as the PEBA's "grandfather clause" and states that

> [a] public employer other than the state that prior to October 1, 1991 adopted by ordinance, resolution or charter amendment a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives may continue to operate under those provisions and procedures. Any substantial change after January 1, 2003 to any ordinance, resolution or charter amendment shall subject the public employer to full compliance with the provisions of Subsection B of Section [10-7E-]26 of the [PEBA].

Section 10-7E-26(A) (2003). New Mexico courts have said that the effect of the grandfather clause "is to narrow, qualify, or otherwise restrain the scope of the statute. [It] remove[s] from the statute's reach a class that would otherwise be encompassed by its language." *Regents of Univ. of N.M. v. N.M. Fed'n of Tchrs.*, 1998-NMSC-020, ¶ 24, 125 N.M. 401, 962 P.2d 1236 (citation omitted); *Am. Fed'n of State, Cnty. & Mun. Emps., v. City of Albuquerque*, 2013-NMCA-012, ¶ 10, 293 P.3d 943 (*AFSCME I*) (same).

**{10}** In this case, it is undisputed that the County adopted a collective bargaining ordinance in 1975 and that the County's ordinance is entitled to grandfather status. Nevertheless, the district court concluded that Section 10-7E-17(E) of the PEBA was still applicable to the economic components of the parties' CBA based on this Court's decision in *AFSCME I*. As we explain, *AFSCME I* did not reach the question of whether the PEBA continued to apply to grandfathered ordinances; instead, our decision in *AFSCME II* resolved the question and supports the Union's view.

**{11}** In *AFSCME I*, several unions' collective bargaining agreements with the City of Albuquerque were set to expire. 2013-NMCA-012, ¶ 2. During negotiations for a new agreement, the unions sought a declaratory judgment from the district court to continue the expiring agreements until new agreements were reached. *Id.* ¶ 3. After the district court granted summary judgment in favor of the City of Albuquerque, the unions appealed, contending that the City of Albuquerque's collective bargaining ordinance

violated the PEBA because it did not include a binding-impasse arbitration procedure or an "evergreen provision" requiring expired collective bargaining agreements to remain in effect until new agreements are executed—two provisions required by the PEBA for collective bargaining systems adopted after October 1, 1991. *Id.* ¶¶ 11, 17. This Court held that the PEBA does not require the city's collective bargaining ordinance, adopted *before* October 1, 1991, to contain such procedures and that the ordinance was entitled to grandfather status. *Id.* ¶¶ 9-19. After concluding that the ordinance was grandfathered, this Court considered whether Section 10-7E-18(D) of the PEBA (the statutory evergreen provision) was subject to the appropriation requirements set out in Section 10-7E-17(E) and held that it was. *AFSCME I*, 2013-NMCA-012, ¶ 23.

**{12}** In this case, the district court reasoned that in *AFSCME I*, "[d]espite holding that the [c]ity's [collective bargaining ordinance] was grandfathered, the Court [of Appeals] also held that both Section 10-7E-17(E) of PEBA and its evergreen clause . . . were applicable." However, the city in *AFSCME I* had *agreed* that the PEBA evergreen provision applied to it and had not argued in the district court, as it did on appeal, "that the grandfather clause of the PEBA applies to the [collective bargaining ordinance] with respect to the [ordinance]'s silence concerning evergreen status." *Id.* ¶ 22. Consequently, this Court did not "address the [c]ity's grandfather clause argument because the [c]ity did not raise it before the district court." *Id.* Likewise, this Court also pointed out that "no argument has been made that, even if the impasse resolution procedures of the [ordinance] are entitled to grandfather status, Section 10-7E-17(E) of the PEBA does not apply to the [c]ity." *AFSCME I*, 2013-NMCA-012, ¶ 22. In context, *AFSCME I*'s holding was not that Section 10-7E-17(E) controlled over a grandfathered ordinance, but rather, that "Section 10-7E-17(E) applies to economic components of the extension of the expired collective bargaining agreements *under the PEBA evergreen provision*." *AFSCME I*, 2013-NMCA-012, ¶ 23 (emphasis added).

**{13}** Although *AFSCME I* did not resolve the question of whether these PEBA provisions were generally applicable to a grandfathered ordinance, this Court took up that question later in 2013 in *AFSCME II*. In that case, this Court examined whether the PEBA's evergreen provision applies regardless of the city's grandfather status and concluded it did not. 2013-NMCA-063, ¶ 12. *AFSCME II* held that "the Legislature's inclusion of a two-section grandfather clause indicates its intent that certain public employers should be exempt from compliance *with every requirement of the PEBA*." *Id.* ¶ 10 (emphasis added). "The first section of the clause . . . specifically provides that a public employer [like the city], . . . which has enacted a collective bargaining system prior to October 1, 1991, may continue to operate under those provisions and procedures despite the requirements of the PEBA." *Id.* (internal quotation marks and citation omitted).

**{14}** In light of *AFSCME II*, we agree with the Union that Section 10-7E-17(E) is inapplicable to the grievance resolution in this case. While the County, for its part, continues to assert that "[t]he County's Labor Ordinance is grandfathered, but PEBA still applies to require availability and specific appropriation of funds[,]" the County cites only to *AFSCME I* and does not acknowledge or address *AFSCME II* on appeal, nor has it

provided any rationale as to why Section 10-7E-17(E) should otherwise apply to its grandfathered ordinance. Accordingly, we hold that Section 10-7E-17(E) is inapplicable here such that the enforcement of the grievance resolution was not contingent on the appropriation or availability of funds. In light of this holding, we reverse the district court's conclusion that the County and the Union cannot be said to have mutually assented to the grievance resolution because the County did not make a corresponding appropriation.

## III.     The County's Additional Arguments

**{15}**     We briefly address, and reject, two additional arguments raised by the County in support of affirmance.

## A.     The Bateman Act

**{16}**     The County argues that the Bateman Act, Section 6-6-11, precludes enforcement of the grievance resolution. "The purpose of the Bateman Act is to prevent counties and municipalities from contracting debts that they are not able to pay." *Treloar v. Cnty. of Chaves*, 2001-NMCA-074, ¶ 23, 130 N.M. 794, 32 P.3d 803. It provides (in addition to criminal penalties for boards of county commissioners that become overextended), that if a board of county commissioners contracts a debt greater than what can "be paid out of the money actually collected and belonging to that current year," then that debt is void. Section 6-6-11.

**{17}**     The County's claim that the grievance resolution violated the Bateman Act is an affirmative defense, and therefore, the County "had the burden of pleading and proving a violation of the Bateman Act." *Treloar*, 2001-NMCA-074, ¶ 22. On appeal, the County offers only a summary overview of the Bateman Act and does not point to any facts that would establish a violation of the Act. Specifically, while the County established that funds were not *appropriated*, the County has not cited to any portion of the record to establish that it could not have paid for the Union's raises pursuant to the grievance resolution from the money actually collected and belonging to the County during the current year. And while the district court referenced the Bateman Act briefly in its order, it did not provide further analysis of the Act or include any recitation of undisputed facts that would support its application here.

**{18}**     At present, the facts are insufficiently developed to uphold the district court's grant of summary judgment based on the Bateman Act alone, and we therefore decline to affirm on that basis. *Albuquerque Police Officers' Ass'n*, 2013-NMCA-110, ¶ 6 ("Summary judgment should not be granted when material issues of fact remain or when the facts are insufficiently developed for determination of the central issues involved." (internal quotation marks and citation omitted)).

## B.     The Grievance Resolution Complied With the Terms of the CBA

**{19}** The County also argues that the grievance resolution does not qualify as a settlement and was otherwise unenforceable because the Chief of Corrections did not have authority to approve a pay raise. The district court acknowledged that the Chief of Correction's action in "sustaining" the grievance could be treated as a binding settlement under the CBA, and we affirm that conclusion.

**{20}** Article 18 of the CBA articulates the grievance resolution procedure and is the sole method for resolving any dispute "concerning the application, interpretation or meaning of [the CBA], except as may be provided by law or other regulation." Article 18 of the CBA defines "grievance" as:

> [A]ny formal complaint by or on behalf of a particular employee or group of employees alleging that the grievant's rights, benefits, privileges or interests set forth in this Agreement have been violated or that this Agreement has been misapplied with respect to the grievant in a particular situation.

"Settlement" is defined as "the agreed-upon resolution of the grievance, set out in writing and signed and dated by the parties." Article 18 of the CBA then lays out the dispute resolution process. Step one of the process requires the grievant to sign, date, and submit a formal written grievance on an approved form to the "Chief of Corrections" within ten days of becoming aware of the event causing the grievance. The Chief of Corrections must respond within five days of receipt of the grievance by making a response on the grievance form, and then returns the completed form to the grievant or a union representative. If the Chief of Correction's response does not settle the grievance, the grievant proceeds to step two, which involves an appeal to the county manager and a subsequent hearing. If the grievance is not resolved at step two, the dispute is submitted to arbitration. Notably, Article 18 also provides that "[i]f the County issues a written response at Step One or Step Two . . . and the grievant fails to appeal to the next step within the time limits, the grievance shall be deemed settled on the basis of the County's last response."

**{21}** There is no dispute that the Union followed this procedure. Under the plain terms of Article 18 of the CBA, the grievance resolution signed by the Chief of Corrections constituted a settlement. We also reject the County's argument that the Chief of Corrections did not have authority to resolve the BCCOA's grievance under Article 18 of the CBA. On the contrary, the Chief of Corrections was not only authorized by the CBA to resolve grievances at step one of the grievance procedure, he was required to do by Article 18 of the CBA's command that the Chief of Corrections *shall* respond in writing upon receipt of a grievance form within five days.

**{22}** For these reasons, we affirm the district court's conclusion that the grievance form can be treated as a binding settlement.

**CONCLUSION**

**{23}** We hold that Section 10-7E-17(E) of the PEBA is inapplicable to the CBA's lockstep provision and that the County has not demonstrated an alternate basis for affirmance here. We reverse the district court's grant of summary judgment in favor of the County and remand this case for further proceedings consistent with this opinion.

**{24}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**